TERRITORY OF OKLAHOMA, *ex rel*, JOHN J. SAMPSON, *et al.*, *Board of County Commissioners of Logan County*, vs. A. Z. CLARK, *Trustee and Assessor of Spring Creek Township, Logan County, Oklahoma Territory.*

1. AGREED CASE—Under the provisions of section 541, of article 21, of chapter 66, page 852, Statutes of Oklahoma, 1893, parties to a question which might be the subject of a civil action may agree upon a case containing the facts of the controversy, and submit the same to any court, which would have jurisdiction if an action had been brought, and the court shall render judgment as if an action were pending.

2. CONSTRUCTION OF STATUTES—*Intention of Legislature Governs*—In the construction of statutes, it is a cardinal rule that the intention of the legislature must govern.

3. WORDS MODIFIED, ALTERED OR SUPPLIED—In the construction of statutes, when the intention of the legislature can be gathered from the statute, words may be modified, altered or supplied to give to the enactment the force and effect which the legislature intended.

4. INTENTION ASCERTAINED BY THE WHOLE ENACTMENT—Also in such interpretation the intention of the legislature must be ascertained by a construction of the whole act or enactment or enactments of the legislature on the same subject.

5. PROVISIONS TO BE HARMONIZED—In construing an act, the court should, if possible, so interpret all of the provisions of an enactment or enactments of the legislature as to harmonize their various provisions, and, so far as possible, to give reasonable effect to all.

6. REVENUE LAW, *Construction of—What Improvements on Government Lands Taxable—Lots not Deeded Taxable*—Construing the seventh subdivision of section 2, of article 1, of chapter 70, Statutes of Oklahoma, 1893, page 1032, which provides that "all breaking, wells or fertilizing upon lands upon which final proof has not been made" shall be exempt from taxation, together with subdivision fifteenth of section 3, or the same article which provides that "all other property, real and personal, of any kind not including improvements upon government lands, or lots not deeded," shall be subject to taxation; also, together with subdivision fifteenth of section 1, of of article 2 of the same chapter, which provides that the list of taxable property made by the assessor, and assessed to each person, shall contain "all other property not specially enumerated in this section by its actual cash value, except as is specially exempted by section 2 of this chapter," it is *held*, that the legislature intended that all improvements upon government lands (except all breaking, wells or fertilizing), and also lots not deeded, on lands where final proof and final entry had been made, are subject to taxation.

This is an agreed case originally submitted in this court asking that a peremptory writ of *mandamus* may issue commanding the defendant to proceed to list for taxation certain property in Spring Creek township, Logan county, Oklahoma Territory.

*Huston & Huston,* for appellants.

The opinion of the court was delivered by

BIERER, J.: This is an agreed case in *mandamus,* submitted as an original proceeding in this court to determine in a summary manner the legal question involved, under the provisions of general § 4419, § 541,

of article 21, of chapter 66, page 852, of the statutes of Oklahoma of 1893, which provides :

"§ 541.    Parties to a question, which might be the subject of a civil action, may, without action, agree upon a case containing the facts upon which the controversy depends, and present a submission of the same to any court which would have jurisdiction if an action had been brought. But it must appear, by affidavit, that the controversy is real, and the proceedings in good faith to determine the rights of the parties.    The court shall thereupon hear and determine the case, and render judgment as if an action werepending."

All of the provisions of this section have been fully complied with, and we will determine the question involved in the same as if it had been brought before us by an original action in the usual form.

The sole question involved in this controversy is as to whether or not improvements upon government lands, and lots not deeded, excepting the breaking, wells and fertilizing upon lands upon which final proof has not been made, are subject to taxation; and this question involves the construction of certain sections of the revenue law of this territory.

The legislature of 1893 passed an act, which took effect March 14, 1893, entitled, "An act to provide for the raising and collecting of revenue and repealing chapter 75, of the statutes of Oklahoma, entitled 'Revenue.'"    (Stat. of Oklahoma, 1893, page 1031.)

The seventh subdivision of section 2, article 1, of said act (chap. 70, Stat. of Oklahoma, 1893, p. 1032) is, with the heading of the section, which must be read to get the meaning thereof, as follows:

"Sec. 2.    The following classes of property shall be exempt from taxation, and may be omitted from the list herein required to be given."

"7.    All breaking, wells or fertilizing upon lands upon which final proof has not been made."

Section 3 of the same article, excepting the first fourteen subdivisions thereof, is as follows:

"Sec. 3.   All other property, real and personal, shall be subject to taxation in the manner provided in this act."

"15.   All other property real and personal, of any kind, not including improvements upon government lands, or lots not deeded."

Subdivision 15, of section 1, of article 2 of said act, which provides for the manner of listing property and what the list of taxable property made by the assessor and assessed to each person shall contain, provides as follows:

"15.   All other property not specially enumerated in this section by its actual cash value, except such as is specially exempted by section 2 of this chapter."

This last provision, referring to "section 2 of this chapter" was evidently intended to refer to section 2 of article 1 of this chapter, for that is the only section 2 contained in any part of this chapter which refers to the exemption of property from taxation.

This controversy depends upon the construction to be given by the court to the fifteenth subdivision of section 3, of article 1, above given.

It is contended by the assessor that this subdivision referred to exempts from taxation all improvements upon government land and all lots not deeded.

This part of the statute, upon its face, seems to read that way, but, in construing it, we must consider the well known rules for the construction of statutes. In the construction of statutes, it is a cardinal rule that the intention of the legislature must govern. (Sutherland on Statutory Construction, § 218; Sedgwick on the Construction of Statutory and Constitutional Law, p. 325.)   Also, that when the intention can be gathered from the statute, words may be modified, altered or supplied to give to the enactment the

force and effect which the legislature intended.    (Sutherland on Statutory Construction, § 218.)

In the Eureka case, 4 Saw. 302-317, Judge Field, delivering the opinion of the court, said:

"Instances without number exist where the meaning of words in a statute has been enlarged or restricted and qualified to carry out the intention of the legislature.    The inquiry, where any uncertainty exists, always is as to what the legislature intended, and when that is ascertained it controls."

Another rule for the interpretation of statutes is, that the intention of the legislature must be ascertained by a construction of the whole act, and all of the enactment or enactments of the legislature on the same subject must be so construed as to "harmonize their various provisions and, so far as possible, to give reasonable effect to all."

*State ex rel. Watson, vs. Cobb,* 2 Kan. 32; *State vs. Young,* 17 Kan. 41; *Commissioners of Pottawatomie County vs. Albert Morrall,* 19 Kan. 141; *Gardenshire vs. Mitchell,* 21 Kan. 83; *Wenger vs. Taylor,* 18 Pac. 911; *Pond vs. Maddox,* 38 Cal. 572.

In the light of these rules, reading the fifteenth subdivision of § 3, of article 1, of chapter 70, in connection with the seventh subdivision of § 2, of article 1, and in connection with the fifteenth subdivision of § 1, of article 2, all of the same chapter, it will be manifest that there is an apparent conflict between the fifteenth subdivision of § 3, of article 1, and all the other provisions of the same enactment, and we must, if possible, harmonize them so as to give effect to all provisions of this enactment of the legislature in accordance with the legislative intent.    It will be observed that the seventh subdivision of § 2, of article 1, is contained in an article entitled, "Property Subject to Taxation," the first section of which gives the general classes of property subject to taxation, and the sec-

ond section under which the seventh subdivision occurs, relates to specific property which is exempt from taxation. Under this provision the legislature, when it had under consideration the question as to what property in the way of improvements upon government lands upon which final proof had not been made, designated three specific items which should be exempt from such taxation. These were breaking, wells and fertilizing. The fifteenth subdivision of § 3, which is the bone of contention and makes the trouble, is contained under § 3, of article 1, which relates to the kinds of property which shall be subject to taxation, and does not relate to the exemption of property from taxation ; and we believe, construing the statute and these provisions together, that if the legislature had intended that all improvements upon government lands and all lots not deeded should be exempt from taxation, they would have shown such intent by enumerating these articles as exempt from taxation under the seventh or some other subdivision of § 2, of article 1. The seventh chapter of our revenue law is a substantial re-enactment of the provisions of chapter 75, of the laws of Oklahoma, of 1890, relating to revenue, with certain modifications. The two enactments are drawn under the same heading and the same title, excepting the addition of the repealing part that is added to the last enactment ; they have the same number of articles, excepting that to the present chapter 70 is added an article relating to the extension of the time for the payment of the taxes of 1893, and each article is given the same title as the old one ; and we can gather the intention of the legislature somewhat by a comparison of the two. The twentieth subdivision of § 3, of article 1, of chapter 75, of the laws of 1890, for which this subdivision fifteenth of § 3, of article 1, of the present law is substituted, reads as follows :

"20.   All other property, real and personal, of any kind, including all improvements upon government lands, or lots not deeded."

It will be observed that this present subdivision, fifteenth, is couched in the same language as the old enactment, excepting that after the word "kind" the word "not" is inserted and the word "all" is omitted. When the legislature were revising the old chapter of our revenue law and came to this subdivision twentieth, they found that it provided that all improvements upon government lands and all lots not deeded were subject to taxation.

They evidently did not desire to continue to tax all improvements upon government lands, for they had said in the seventh subdivision of the section with reference to the exemption of property from taxation, "that all breaking, wells, or fertilizing" upon lands not deeded should be exempt from taxation, and they then inserted the word "not" and omitted the word "all," evidently intending not that all improvements upon government lands should be exempt from taxation; also intending not that all improvements upon government lands should not be subject to taxation, but actually intending that all other property than that specifically in the subdivisions before that contained in the same section, real and personal, of any kind, not including exempt improvements upon government lands, also including lots not deeded, should be subject to taxation.   This construction makes all of the sections of this article consistent one with the other.   A construction exempting from taxation all improvements upon government land, or lots not deeded, from taxation, makes subdivision fifteenth, of section 2, of article 1, inconsistent with the other provisions of this chapter referred to.   After the legislature had passed along in their revision of this statute and had come to subdivision fifteenth of section 1, of article 2,

relating to the manner of listing property, they provided that all property than that which had in the same section been specifically enumerated should be listed at its actual cash value, except such as was specifically exempted in section 2 of the same chapter (meaning section 2, of article 1), that is, they meant that all property should be listed except that such as they, by their own enactment, had specifically exempted by said section 2.

The legislature evidently did not mean that the fifteenth subdivision of § 3 should be taken as a provision for exemption and as granting a much broader exemption than the provision specifically made upon that subject, but they meant that no property should be exempted except that which was made specifically exempt by § 2, of article 1. The change in subdivision fifteen, of § 3, of article 1, of the present statute was evidently made not to extend the exemptions of § 2, of article 1, but in order that there might be no question that the improvements which had been exempted should not be subject to taxation.

We do not believe that so far as the language of this subdivision fifteen, of § 3, of article 1, of this act, is concerned, there can be any serious question as to whether or not the legislature intended that "lots not deeded" should be subject to taxation. The expression "not including improvements upon government lands" is not intended also to include the designation of "or lots not deeded." Those are two distinct expressions, separated by a comma between "lands" and "or" and were not intended by the legislature to be considered together, or else the comma would have been omitted, and the expression would have read "not including improvements upon government lands or lots not deeded," omitting the comma. The expression "lots not deeded" was evidently intended to refer to property which consisted of lots in a townsite

upon which the entry had been made and the lots of which had not been deeded to the beneficiaries, and this species of property was intended to be taxed independently of any question of improvements thereon, the same as any other real estate. It was undoubtedly given the specific designation in order that no technical question of its actual status in law might prevent it from being made subject to taxation. The reference to improvements upon government lands cannot be said to be confined to government lands covered by a homestead entry or subject to a homestead claim ; for improvements upon a town lot upon which entry had not been made are as much improvements upon government lands as would be the case if the improvements were on a tract of land subject to homestead entry, but upon which final proof had not been made. The legislature evidently intended to make their provision with reference to improvements upon government lands to include both government lands held by homestead entry and government lands held under a townsite claim, but where in such cases, final proof and entry had not been perfected. The "lots not deeded" referred to another class of property, as above stated. We do not believe that there is any substantial ground for the claim of the defendant that "lots not deeded" were intended to be exempt from taxation.

This enactment of the legislature was passed for the purpose of raising revenue and not for the purpose of relieving valuable properties from their proper share in contributing to the burdens of taxation. The history of this country makes us know, as the legislature must have known in passing this law, that many of the most valuable lots in the cities of this territory are yet not deeded. The litigation concerning some has not yet passed beyond the control of the land department and the deeds given, or in the newer por-

tion of the territory sufficient time has not elapsed in which the trust imposed upon the townsite trustees could have been administered and the deeds passed, yet these lots are private property. They are liable to execution for debt, they are a valuable property of which the occupant under the land laws is the owner, but has not the legal title. Why should such property be exempted from taxation? We can see no reason, nor do we believe the legislature saw any, or intended so, for their enactments exhibit an entirely different intent.

This conclusion on our part to interpret this revenue law by restructing the meaning of subdivision fifteen, of § 3, of article 1, and adding the word "exempt" thereto so as to interpret it as if it read:

"15. All other property, real and personal, of any kind, not including 'exempt' improvements upon government land, and lots not deeded."

(The phrase, "and lots not deeded" relating back to to the phrases, "all other property, real and personal of any kind," so as to give it the meaning of also including in the property subject to taxation also lots not deeded ) is sustained not only by what we believe the legislature actually meant in passing this law, as we gather their meaning from the entire enactment, but also by ample authority.

Sutherland in his work on Statutory Construction, § 246, says:

"The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature apparent by the statute; * * * * General words or clauses may be restricted to effectuate the intention or to harmonize them with other expressed provisions. * * * The sense in which they were intended to be used furnishes the rule of interpretation, and this is to be collected from the context; and a narrower or more extended meaning is to be given according to the intention

thus indicated.    In an act providing for raising state taxes, railroads were taxed on the basis of passenger traffic, and it was provided that every railroad paying such tax should not be assessed 'with any tax on its lands, buildings or equipments.'    This exemption was confined to the taxes of the kind provided for in the act, and was held not to conflict with another act for a muncipal tax."

The words "or" and "and" are very often loosely used in legislative enactments, and one is often read in the place of the other, in order to give the real meaning to the legislative enactment.    Sutherland on Statutory Construction § 252.    In the interpretation of legislative enactments a word is often rejected as surplusage or a word substituted, in order to give full effect to the law.

In the case of *Palms vs. Shawana County*, 61 Wis, 211, the supreme court of that state, in construing the statute, substituted the word "north" for the word "south" and announced the rule to be :

"The court will inspect the whole act. and, if the true intention of the legislature can be reached, the false description will be rejected as surplusage, or words substituted, in the place of those wrongly used, which will give effect to the law."

Citing numerous authorities from different states in support thereof.

Another well known rule of interpretation of statutes which guides us in our conclusion in this case is, that where there are specific provisions in the act relating to a particular subject, they control as against general provisions in other parts of the statute, although the general provisions standing alone would give to the act another meaning.

Endlich on the Interpretation of Statutes, § 216; *Felt vs. Felt*, 19 Wis. 208.

In this last case the court says :

"But it is a well settled rule of construction, that specific provisions relating to a particular subject,

must govern in respect to that subject, as against general provisions in other parts of the law, which might otherwise be broad enough to include it."

Now in the case at bar a provision exempting "all breaking, wells or fertilizing" upon public lands is a specific provision with reference to the property that should be exempted from taxation. The language in the other part of the statute, "not including improvements upon government lands, or lots not deeded" is a general expression made not with reference to the exemption of property from taxation, but with reference to property that should be subject to taxation, and we consider that the specific provisions relating to exemption; also the specific provision in the fifteenth subdivision of article 2, with reference to the listing of property, except that specifically exempted in § 2, of article 1, of the chapter, should control over this general provision contained in the first part of the statute referring to property that should be taxed, and not to property that should be exempted from tax.

Another illustration of the doctrine which the courts have established in substituting one word for that of another, or adding another word in the legislative enactment, in order to harmonize all the provisions of the enactment and give to it the meaning which the legislature evidently intended, is found in the case of *Moody & Perkins vs. Stephenson*, 1 Minn. 401, where it was held that the word "final" should be substituted for the word "penal" in one section of a chapter providing for the removal by appeal or writ of error of causes from the district courts to the supreme courts of the state.

Entertaining these views, it is our judgment that all improvements upon public lands upon which final proof has not been made, excepting breaking, wells or fertilizing, and all lots not deeded where final proof

and final entry have been made, are subject to taxation and should be listed with the other property subject to taxation when the lists are taken by the assessors under the law.

The judgment of the court is rendered accordingly, and the peremptory writ of *mandamus* prayed for will be allowed with costs.

All the Justices concurring.