**OKLAHOMA COAL CO. v. ATKINSON et al.**

No. 16387—Opinion Filed Feb. 16, 1926.

Rehearing Denied June 22, 1926.

(Syllabus.)

1. **Mines and Minerals—Miners' Liens—Liability of Property in Possession of Operating Company Under Conditional Sale.**

Where, under a contract of conditional sale between the owning company and the operating company, it is stipulated that the operating company shall during the pendency of such negotiations operate the mines, and under the said terms, and while such vendee in possession employs miners to engage in developing said mines, and such operating company makes default in payment of their wages, then such property of the owners is charged with the lien as contained in section 7628 C. O. S. 1921.

2. **Statutes—Construction — Legislative Intent.**

It is a cardinal rule that in the construction of statutes the legislative intent must govern, and to arrive at the legislative intent the entire act must be considered, together with all other enactments upon the same subject, and when the intention of the Legislature can be gathered from the entire statute, words may be modified, altered, or supplied to give the statute the force and effect which the Legislature intended. Oklahoma Natural Gas Co. v. Corporation Commission et al., 90 Okla. 84, 216 Pac. 917.

3. **Judgment Sustained.**

Record examined, and held, that the same supports the judgment of the court.

Error from District Court, Okmulgee County; James Hepburn, Judge.

Action by R. Atkinson et al. against the Oklahoma Coal Company and another. Judgment for plaintiffs, and defendant named brings error. Affirmed.

Jones & Randolph and Ephraim H. Foster, for plaintiff in error.

C. E. B. Cutler, for defendants in error.

LESTER, J. The parties will be referred to as they appeared in the court below.

This action was commenced by plaintiffs against the defendant and the Consolidated Fuel Company in the superior court of Okmulgee county, and thereafter the cause was transferred to the district court of Okmulgee county.

The plaintiffs alleged in their petition that they were engaged in the occupation of mining coal, and assert that they had performed work and labor in the mines operated by Consolidated Fuel Company, and that said company had made default in the payment of their wages for labor performed. They prayed judgment for the amount due them for such labor, and also a lien on the mine and property where said labor and work had been performed. The plaintiffs also alleged in their petition that the defendant Oklahoma Coal Company claims some right, title or interest in the property upon which the said plaintiffs had performed such labor, but that whatever right, title, or interest it had in said property was junior and inferior to the rights of the plaintiffs' lien thereon.

The Oklahoma Coal Company filed its separate answer, as did the Consolidated Fuel Company. The plaintiffs filed their reply to the answer of the Oklahoma Coal Company, and on the issues presented by the pleadings of the plaintiffs and the Oklahoma Coal Company, a trial was had to the court, which resulted in a judgment in favor of the plaintiffs on their claim for labor and work performed, and adjudging their lien prior to the interest, right, or claim of the Oklahoma Coal Company. The Consolidated Fuel Company made no appearance at the trial, and accordingly judgment was rendered against it in favor of the plaintiffs for the amount which they claimed as due them for their labor and services. From the judgment rendered in favor of the plaintiffs and against the Oklahoma Coal Company, the latter prosecutes this appeal to reverse the same.

The defendant in its brief and argument groups its assignments of error from one to four, inclusive, and discusses them together. As heretofore stated, the Oklahoma Coal Company was made a party defendant by the plaintiffs, and they alleged:

"Plaintiffs further allege that the defendant, Oklahoma Coal Company, claims some right, title, or interest in or to the above described properties; that the nature of said claims of said Oklahoma Coal Company is to said plaintiffs unknown, and whatever right, title, or interest said Oklahoma Coal Company has is junior and inferior to the rights of said plaintiffs to a lien on said real and personal property, and said defendant, Oklahoma Coal Company, should be required to file its answer herein setting forth the exact nature of its claim."

The defendant Oklahoma Coal Company filed its answer to said petition, in which it alleged that it was the owner of all the property therein described, and that said Consolidated Fuel Company had no right, title, or interest therein, except as vendee in possession under a certain executory contract of sale, which is set out as an exhibit to the answer. In the answer of the Oklahoma Coal Company it attached a copy of the executory contract of sale made with the said Consolidated Fuel Company and made the same a part of its answer, and said contract was thereafterward introduced in evidence in the trial of said cause. It was provided in paragraph 4 of said contract of sale that the Consolidated Fuel Company should, during its occupancy of said premises, pay all taxes, assessments, and other governmental charges levied or assessed on or against any of the property included in said contract. Paragraph 6 of article 2 of the said contract provided:

"The party of the second part further agrees to mine and operate said mines in a workmanlike and skillful manner, according to improved methods of modern mining appropriate to the region, and it shall comply with all statutory laws, whether federal, state, or municipal, regulating and affecting, and said party of the second part agrees, at its own expense, to maintain the collieries, improvements, buildings, dwelling houses and other property covered by this contract, whether real or personal, in good and serviceable condition and repair, ordinary wear and tear excepted."

Paragraph 1 of article 4 of said contract provided:

"The party of the second part further agrees in consideration of the sale of said properties to it and the extension of time in the payment thereof to expend in improvements on said property the sum of fifty thousand dollars ($50,000), of which said amount twenty-five thousand dollars ($25,000) shall be expended as soon as practicable after the execution and ratification of this contract and the balance on or before July 1, 1923. The party of the first part shall have access at any reasonable time to the books of account of the party of the second part and to the property in order to determine that such expenditures have been made."

At the trial between the plaintiffs and the Oklahoma Coal Company, certain stipulations were entered into between said plaintiffs and the Oklahoma Coal Company. Among the facts stipulated are the following:

"It is further stipulated and agreed that said property, at the times involved herein, was in the possession of the Consolidated Fuel Company, a corporation, under and by virtue of a certain contract of sale executed by the Oklahoma Coal Company and the Consolidated Fuel Company on the 26th day of September 1922. * * * It is further stipulated that the Consolidated Fuel Company took possession of the property involved herein, both real and personal, on or about the 1st day of January, 1923, under and in pursuance of the terms of said contract entered into by and between the Oklahoma Coal Company and the Consolidated Fuel Company above referred to, and remained in possession and in full control of said property from the last-mentioned date until the appointment of receivers in this cause, and that said Consolidated Fuel Company operated the mines located on said property and in the operation of said mines employed the plaintiffs herein as coal miners, and that said plaintiffs and each of them performed labor and services as set forth in their petition for and on behalf of the Consolidated Fuel Company in the operation of said mines. That said plaintiffs were employed by the Consolidated Fuel Company under a contract, by the terms of which said plaintiffs and each of them were to be paid their wages as such miners, each 15 days. That all of the wages due said miners were paid up to and including the 14th day of May, 1924. That said Consolidated Fuel Company defaulted on the pay roll due said plaintiffs and each of them, on the 1st day of June, 1924, for the period of time running from May 15th, to June 1, 1924, and thereafter defaulted on the pay roll due said plaintiffs and each of them for the period of time extending from, June 11th to June 16th, inclusive. * * * It is further stipulated and agreed that the labor and services rendered and performed by said plaintiffs were all rendered and performed upon what is known as 'Mine No. 5,' and that said mine is located upon leased property in the S. ½ of the N. E. ¼ of section 32, township 12 north, range 13 east, Okmulgee county, Oklahoma.

"It is further stipulated and agreed that there is located on mine No. 5. a tipple and all the necessary machinery for the purpose of operating and developing the same of the total value of not less than $10,000."

The defendant, the Oklahoma Coal Company, in its answer alleged the following:

"This defendant is informed and believes that said Consolidated Fuel Company did expend during the period of its occupancy of said premises some amount on improvements and additions thereto, the exact amount which is to this defendant unknown, but it alleged the amount expended is inconsiderable, amounting to not more than $15,000. * * *" (C.-M. 32.)

The testimony of E. R. Jones, witness for the Oklahoma Coal Company, in regard to the value of improvements and additions to said mine under said contract, was as follows:

"Q. Now with reference to this provision in the contract for the expenditure of $50,-000 on your property by the Consolidated Fuel Company, they expended $40,000, or $50,000, have they not? A. Mr. Alcorn, I think—our belief is now that they used our property, sold some of it and made certain replacements and have not spent $50,000. (C.-M. 94.) Q. Just give us your knowledge. A. I say, they have not. (C.-M. 94.) Q. How much would you say they have spent there? A. I think $20,000 more than they spent there. (C.-M. 94.) Q. Twenty thousand would cover it? A. I do not think they spent that, to tell the truth about it." (C.-M. 94.)

The plaintiffs assert their lien on said property under and by virtue of section 7628, C. O. S. 1921, which is as follows:

"All miners and other employes engaged in the work of developing and opening up coal and other mines, sinking of shafts, the construction of slopes or drifts, the driving of entries, mining in coal and other mines, and for all labor performed in and about such mines shall have, as security for such work performed, a lien upon all property of the person, owner, agent, firm or corporation owning, constructing or operating such mine or mines, used in the construction or operation thereof, to satisfy in full amount due for such labor performed; the same to be enforced and secured upon the same general terms and after the manner of procedure in granting mechanics' liens."

The defendant, the Oklahoma Coal Company, attacks the constitutionality of this statute and contends that it takes the property of another without due process of law, and further contends that the last paragraph of said section, namely; "same to be enforced and secured upon the same general terms and after the manner of procedure in granting mechanics' lien," is ambiguous, uncertain, ungrammatical in punctuation, and therefore meaningless.

In the case of the Oklahoma Natural Gas Co. v. Corporation Commission et al., 90 Okla. 84, 216 Pac. 921, Mr. Justice Nicholson, speaking for the court, said:

"It is a cardinal rule that in the construction of statutes the legislative intent must govern, and to arrive at the legislative intent the entire act must be considered, together with all other enactments upon the same subject, and when the intention of the Legislature can be gathered from the entire statute, words may be modified, altered, or supplied to give the statute the force and effect which the Legislature intended. Territory v. Clark, 2 Okla. 82, 35 Pac. 882; Stiles v. City of Guthrie, 3 Okla. 26, 41 Pac. 383; Blevins v. W. A. Graham Co., 72 Okla. 308, 182 Pac. 247; Ledegar v. Bockoven, Co. Treas., 77 Okla. 58, 185 Pac. 1097. And as the purpose of construing a statute is to ascertain the legislative intent, the court may substitute or supply a necessary and proper word to attain this result. Trustees, Executors & Securities Ins. Corp. v. Hooton, 53 Okla. 530, 157 Pac. 293, L. R. A. 1916E, 602. Also, where words have been erroneously used in a statute and the context affords the means of correction, the proper words will be deemed substituted. Shaffer v. Board of Com'rs of Muskogee County, 33 Okla. 288, 124 Pac. 1069."

Applying the rule thus laid down to the statute in question, we are clearly of the opinion that the language used in said statute, to wit, "same to be enforced and secured upon the same general terms and after the same manner as procedure in granting mechanics' liens," is procedural only and refers to the manner in which the lien claimant must proceed in order to protect his lien. In other words, the lien is given to the miner for his labor, and in order to enforce such lien he must proceed in like manner as that provided for the enforcement of mechanics' liens. By the terms of the agreement between the Oklahoma Coal Company and the Consolidated Fuel Company, the latter was to operate the mines. It was contemplated by both parties to such agreement that it would necessitate the employment of miners, and it was further contemplated by the contracting parties that mutual benefits would be derived by the contracting parties by reason of the mines being operated.

The Oklahoma Coal Company entered into this agreement with the Consolidated Fuel Company on the 22nd day of September, A. D. 1922, with full knowledge of the existence of section 7628, C. O. S. 1921. Under the terms of the agreement between the Oklahoma Coal Company and the Consolidated Fuel Company it was the duty of the latter company to operate the said mines, and in the event that the said Consolidated Fuel Company had failed to operate the said mines under the terms of the said contract, it would have violated such contract with

the Oklahoma Coal Company, and in order to comply with the said contract, it became the duty on the part of the Consolidated Fuel Company to employ miners in order that it might comply with said contract, and in order that they might make and provide for the betterments mentioned in said contract. And of course the miners became engaged, not only in making the improvements set forth in said contract, but in extending entries therein in said mine, all of which labor added value to the mines of the Oklahoma Coal Company as well as profit to the Consolidated Fuel Company.

In view of these facts, and it further appearing that the Consolidated Fuel Company was a mere shell without assets, it would be a gross injustice to hold that the miners were without remedy and therefore compelled to lose the fruits of their labor, which had enhanced the value of the property of the Oklahoma Coal Company, for if the miner has no lien on the mine for his labor, and the coal, which is a product of his labor, is shipped and sold, then he has nothing upon which he can seize and sell to satisfy his claim for work and labor performed. This is just what the statute intended to prevent.

We hold, under the terms of the contract between the Consolidated Fuel Company and the Oklahoma Coal Company, that such contract created an agency through and by which the Consolidated Fuel Company was given the right to employ the plaintiffs to perform labor in said mine, from which the Oklahoma Coal Company cannot thereby complain.

It is further insisted by the defendant that section 7628, C. O. S. 1921, is unconstitutional and void as depriving the owner of his property without due process of law. The defendant cites the case of Harriss v. Parks, 77 Okla. 197, 187 Pac. 470, in which it is said:

"A lien can only be created with the owner's consent; that is, by a contract, express or implied, with the owner of the property or with someone by him duly authorized, or without his consent by the operation of some positive rule of law, as by statute."

In the case of Crosier v. Cudihee, Sheriff, et al., 85 Wash. 237, 147 Pac. 1146, the Supreme Court, in a well-considered opinion, said:

"Appellant contends that section 1156 is unconstitutional in that it prefers liens of this character over any prior security held by a vendor, and grants a lien against the interest of the vendor, when as here, such interest is evidenced by a conditional sales contract. It is also asserted that the effect of the statute deprives appellant of his property without due process of law. Appellant cites no direct authority supporting his contention, and we find none. We cannot recall any rule of law which would make this statute unconstitutional. Statutes establishing priorities as between liens are not uncommon, and such statutes have never been successfully attacked, because liens of this character have been granted priority over vendors,' mortgagors,' and other liens. The fact that appellant is in court seeking the validity of his lien against that of respondents is a sufficient answer to his contention that he has been deprived of his property without due process of law."

Under our view of the case at bar, the contract between the Oklahoma Coal Company and the Consolidated Fuel Company provided for the operation of the mines by the latter company, and of course it was understood between the parties that when such contract was entered into the latter company would have the right to employ men to operate the said mines, and then all of its acts and contracts with their resulting liability were fully understood and contemplated by both the Oklahoma Coal Company and the Consolidated Fuel Company.

From a full examination of the record and the briefs in this case, we are of the opinion that the record sustains the judgment rendered by the district court. The same is therefore affirmed.

NICHOLSON, C. J., and HARRISON, MASON, PHELPS, and CLARK, JJ., concur.

Note.—See under (1) 27 Cyc. p. 774 (Anno). (2) 36 Cyc. pp. 1106, 1128, 1147; 25 R. C. L. p. 960; 3 R. C. L. Supp. p. 1435; 4 R. C. L. Supp. p. 1611; 5 R. C. L. Supp. p. 1355. (3) 4 C. J. p. 1129 §3122.