JAMES, Trustee, et al. v. LEMLER et al.

No. 19120.   Opinion Filed Oct. 29, 1929.

C. B. McCrory, Arthur H. McLain, and A. L. Beckett, for plaintiffs in error.

G. L. Grant and C. E. B. Cutler, for defendants in error.

HALL, C. This controversy involves the question of the attachment of a miner's lien on certain property containing a prior incumbrance, a mortgage. The essential facts, including the history of the case, are as follows:

The B. & A. Mining Company owned and operated a coal mine or mines situated in Okmulgee county. This company owned several adjoining leases, mining machinery and equipment necessary for the operation of the mines. All this property, except a lease covering a 40-acre tract of land belonging to a restricted Indian, was subject to a valid mortgage in the sum of $120,000 in favor of W. R. James, as trustee, one of the plaintiffs in error.

The terms of this mortgage were breached, and the mortgagee (W. R. James, as trustee) brought an action to foreclose same. Judgment was rendered foreclosing this mortgage; and upon the petition of the plaintiff in the action receivers were appointed to take charge of the property, covered by the mortgage and included in the decree of foreclosure, and lease the same for coal mining purposes. The property covered by this receivership order included all the personal property used for coal mining purposes, and all the leases belonging to the B. & A. Mining Company (the mortgagor and the defendant in the action) except the 40-acre tract, the fee of which was vested in Nora Brown, a restricted Indian.

The receivers leased all this property to Harlan Read. Read organized a coal-mining corporation, known as the "Montezuma Creek Coal Company," and commenced operating all the leases for the production of coal, and in connection therewith using all the property, personal and real, which had been theretofore used by the B. & A. Coal Mining Company. In other words, the Montezuma Creek Coal Company succeeded to all the interest and rights to possession of the property for the purpose of operating these coal mines which the B. & A. Company had enjoyed before the receivership became effective. The Montezuma Company, through its superintendent (who also was one of the receivers for the property), employed various persons, defendants in error in this action, to mine coal on this property. These persons rendered the services for which they were employed. The employer, or the Montezuma Company, defaulted in payment of their wages, and they, the defendants in error, brought an action to impress a lien on the property; that is, the leasehold interest in the Nora Brown

tract, and all the personal property used in connection with mining coal thereon. Their action also was to foreclose their liens on said property. These lien claimants filed their action in the foreclosure suit wherein judgment in foreclosure had been rendered, and in which action the said receiverships were pending. They came into that action styling themselves interveners.

Two or three days before these lien claimants filed their petition in intervention, the Montezuma Creek Coal Company transferred all its interest in and to this property to the Acme Coal & Mining Company, a corporation.

In this action, to impress and foreclose these various lien claims, the Acme Coal & Mining Company was not made a party. The Montezuma Creek Coal Company was made a party, and it filed its answer and made its general appearance in court at the trial. W. R. James, as trustee, the judgment creditor, did not take any legal cognizance of the proceedings, and did not file a response to the petition in intervention. Judgment was timely rendered for the lien claimants, in the aggregate, for the sum of $7,458.76, together with the sum of $740 as attorneys' fees. This judgment purported to be a personal judgment against the Montezuma Creek Coal Company in favor of Dewey Lemler et al., defendants in this action, and also purported to impress a lien upon all the personal property, naming and describing it, used in connection with the mining enterprise in which the interveners and lien claimants performed their services. The judgment also purported to impress a lien upon the lease of the 40-acre tract of land known as the "Nora Brown" property or lease. Execution was issued on this judgment, and thereafter an attempt was made to sell the lease specifically described and the property used in connection therewith, and covered by the lien described in the judgment, but no persons could be found willing to purchase the property. At this juncture, it is necessary to state that these defendants in error, the lien claimants, in performing their labor in digging coal in connection with the enterprise, actually dug or excavated the coal from under this Nora Brown lease only. This lease, as already stated, was not covered by the plaintiff's mortgage; neither was it properly within the receivership. However, the lease was taken over by the Montezuma Creek Coal Company and operated along with the other property. It seems that the mine beneath the surface defined by this lease was connected as one unit with the mines on or within the other leases covered by the mortgage. In other words, what might be termed tunnels connected much of the property constituting the mines; and that the tipple and shaft necessary for removing coal out of the Nora Brown lease was located without the boundaries of that lease, and was located on another part of the property which was within the receivership. And in removing the coal from the Nora Brown lease it was necessary to take it partly through land comprising another lease and hoist it upon property the leasehold of which was included in the mortgage and judgment of foreclosure.

About two years after the rendition of this judgment in favor of the lien claimants, the receivers for the property filed their petition in the same case, setting forth, in substance, the history of the proceedings pertaining to this subject-matter, commencing with the filing of the original petition to foreclose the mortgage on the property. The petition of the receivers prayed the court to determine the priorities and the extent of respective liens, if any, and for directions in regard to the disposition of the property.

The plaintiff, W. R. James, as trustee, and the Acme Coal & Mining Company filed their response to the petition of receivers, and expressly pleaded to the merits of the claims of the lien claimants, defendants in error herein, and in addition thereto denied the authority of lien claimants to obtain a judgment fixing a lien or liens upon any property described in said judgment, save and except the leasehold interest in the 40-acre tract of land belonging to the restricted Indian, Nora Brown. This response did not deny to the lien claimants the right to a judgment against the Montezuma Creek Coal Company; but it was their contention that the Montezuma Creek Coal Company had no interest in the property described in the judgment, which had been previously rendered in their favor.

The lien claimants, the defendants in error, filed their response, setting up their claims, and also the judgment previously rendered extending them a lien on certain premises and against the personal property herein involved.

The cause was tried, and after the introduction of considerable parol testimony and voluminous exhibits, the trial court rendered judgment in favor of the interveners, lien claimants, in accordance with the prior judgment in the case establishing their liens, and ordered a foreclosure of the property to

satisfy the judgment and subordinated plaintiff's mortgage or judgment to the claims of the lienholders, the defendants in error.

The plaintiff, W. R. James, as trustee, the receivers and the Acme Coal & Mining Company appealed. In seeking to reverse this judgment, they have specified several distinct grounds as errors of the trial court. First, it is contended that the court permitted a lien to be fastened upon their property —property on which they held a mortgage— when claims of the lienholders bore no other relationship to the property impressed with a lien than that the lien claimants performed services on neighboring property. If that contention were true, in point of fact, the cause would necessarily terminate in favor of plaintiffs in error. We find nothing in the record to disprove the general findings of the court contrary to such contention.

Counsel for plaintiffs in error attach considerable importance to the fact that the original judgment of the lien claimants definitely described the Nora Brown lease as the leasehold interest impressed with a lien. We fail to see any particular significance in that fact, other than that the parties were endeavoring to subject that particular property to a lien, along with other property.

It is next urged that because plaintiffs in error were not made parties to the original action to establish and foreclose the liens of defendants in error, the proceedings were invalid and incapable of correction in any subsequent proceeding. There is considerable merit in that contention.

With regard to legal procedure, the original case of these lien claimants was not cautiously handled. It is true that the lien claimants filed their petition to establish their liens in the pending action, wherein one of the plaintiffs in error was plaintiff; but judgment had already been rendered in the action and the cause was terminated, except for the purpose of selling and disposing of the property pursuant to the statutes. It can hardly be said that the action of the lien claimants was germane to the principal case. These lien claimants did not proceed to establish their liens pursuant to the requirements of the statutes by filing in the office of the court clerk statements of the claims, but followed the rule announced in the case of Peaceable Creek Coal Co. v. Jackson, 26 Okla. 1, 108 Pac. 409. While this is permissible under our law, as evidenced by the recent case of Sutherland Lumber Co. v. Gale, 136 Okla. 233, 277 Pac. 242, which case, upon the principle of stare decisis, followed the case of Peaceable Creek Coal Co. v. Jackson, and held that the bringing of an action in the proper court dispensed with the necessity of a previous filing of the lien statement, but, by reason of our law governing the foreclosure of mechanics' liens, section 7480, Comp. Stat. 1921, which provides for the consolidation of actions to enforce mechanics' liens and to stay any action to enforce a lien upon certain uncompleted improvements, a safer and more orderly procedure is to file the lien statements and proceed to foreclose same at the proper time. This procedure is adhered to in practically all the jurisdictions.

However, in the present case, the right to insist upon the failure to make the plaintiffs in error, W. R. James, trustee, and the Acme Coal & Mining Company, parties to the petition in intervention of the lien claimants, was waived by the fact that these very parties, W. R. James, trustee, and the Acme Company, at a subsequent date, filed, in the same action, their response to the petition of receivers, setting up a defense to the merits of the claims and contention of the interveners; and that the merits of the controversy were actually litigated and determined by the trial court.

It is next contended that the indebtedness or charges against the property were incurred without the consent of the mortgagee, W. R. James, trustee. On this particular point, it is argued that, notwithstanding the plaintiff in error and plaintiff in the trial court petitioned the court to appoint receivers for the mortgaged premises, the receivership order, in extending authority to lease the premises, would be insufficient to give consent to the operation of the premises for mining purposes. That contention is destitute of merit, and was settled by this court in the case of Oklahoma Coal Co. v. Adkinson, 121 Okla. 59, 247 Pac. 366, wherein, in substance, it was held that where a receiver is appointed to lease a mine, in necessary contemplation of law, it is authorizing the employment of men to operate the mines. It takes men and machinery to operate a coal mine, and when a coal mine together with mining property is leased, it is a conclusive presumption that men may be employed to operate it. Of course, it is the fixed law that:

"* * * In administering the affairs of an ordinary insolvent private business corporation, for which a receiver has been appointed, a court of equity has not the power to

authorize the receiver to incur indebtedness for carrying on the business, and to make the same a first and paramount lien upon the corpus of the property, superior to that of prior lienholders, without their consent." International Trust Co. v. United Coal Company (Colo.) 60 Pac. 621; Tardy's Smith on Receivers (2nd Ed.) vol. 1, p. 959; Farmers Loan & Trust Co. v. Grape Creek Coal Co., 50 Fed. 481.

In the present case, the mortgagee consented to the operation of property as a coal mine by expressly asking that the property be leased for such purpose.

For the reasons herein stated, the judgment of the trial court is hereby affirmed.

BENNETT, HERR, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (2) anno. 12 A. L. R. pp. 295, 296; 23 R. C. L. p. 73; 4 R. C. L. Supp. p. 1491; 6 R. C. L. Supp. p. 1360. See "Appearances," 4 C. J. § 30, p. 1339, n. 78. "Receivers," 34 Cyc. p. 354, n. 65.