Jerry V. BEAVIN, Appellant,

v.

STATE of Oklahoma, ex rel.
DEPARTMENT OF PUBLIC
SAFETY, Appellee.

No. 56607.

Supreme Court of Oklahoma.

April 12, 1983.

Donald Lee Ritter, Oklahoma City, for appellant.

Blair Easley, Jr., Associate Counsel, Dept. of Public Safety, Oklahoma City, for appellee.

LAVENDER, Justice:

On the evening of November 21, 1979, Jerry Beavin, Appellant, gave express permission allowing his minor son to drive an uninsured automobile owned by the Appellant and registered in the State of Oklahoma. Early the following morning, for reasons unknown, Appellant's son allowed a friend, Mark S., to drive the same uninsured automobile. Mark S. subsequently became involved in a collision, substantially damaging three vehicles including Appellant's. Mark S. was cited by the Oklahoma City police. However, the citation was later dismissed.

On October 15, 1980, pursuant to 47 O.S. 1981, § 7–206, the State sent Appellant notice that his license and registration were suspended, noting specifically that Oklahoma requires every motor vehicle registered in the state to be insured or proof of financial responsibility be furnished in lieu thereof.

Appellant requested a hearing and on December 18, 1980, a hearing was conducted by the Department of Public Safety.[1] Appellant urged he was without fault for the accident as he had not given the driver,

---

1. Jerry Beavin, Financial Responsibility Hearing No. 80465 (Okla. Dep't of Pub. Safety 1980).

Mark S., permission to drive the automobile at the time of the accident. The Commissioner found:

1. Appellant was the owner of an automobile registered in the state, which was involved in an accident;

2. The accident was covered by the Oklahoma Financial Responsibility Law;

and

3. Appellant came under an exception to the law for the purpose of posting security following an accident.

Appellant's license and registration were then ordered suspended unless Appellant filed proof of financial responsibility within 21 days.[2]

Pursuant to 47 O.S.1981, § 7–102(a) Appellant filed a petition in Oklahoma County District Court requesting review of the Commissioner's order. Appellant contends that under the provisions of 47 O.S.Supp. 1979, § 7–301 he was not required to file proof of financial responsibility for the future, as he was not in the class of persons so required.[3] At the resulting hearing held February 27, 1981, the court found that Oklahoma has a Compulsory Liability Insurance Law.[4] Consequently, the court sustained the earlier order and upheld the suspension of Appellant's driver's license and vehicle registration.

On appeal to this Court Appellant urges that the Oklahoma Financial Responsibility Act is fault based, i.e., before any action can be taken regarding suspension of license and registration Appellant must have been involved in an accident caused by his fault. It is uncontroverted that Appellant was without fault in the accident. Appellant urges that this uncontroverted fact coupled with the exceptions of § 7–203 is enough to exempt him from the requirements of the Act.

The subject of this appeal centers around whether the provisions of § 7–601 are applicable to the owner of an uninsured automobile, involved in an accident, wherein the owner was found to be without fault and subsequently considered to be within an exception to the filing of security following an accident and the filing of proof of financial responsibility for the future.

In support of his contention Appellant urges the United States Supreme Court decision of *Bell v. Burson*[5] and a 1971 opinion by the Oklahoma Attorney General wherein the Attorney General stated that the Oklahoma Financial Responsibility Act is fault based.[6]

Aside from the obvious fact that since 1971 the Oklahoma Legislature has enacted Article VI of the Act[7] (the Compulsory Liability Insurance Law), *Bell* is distinguishable on its facts. In *Bell* the Court was faced with determining whether a Georgia State Statute purporting to suspend the license and registration of an uninsured motorist involved in an accident, regardless of fault, was a violation of due process under the fourteenth amendment. In holding that it was a violation of due process the Court stated:

"[U]nder Georgia's present statutory scheme, before the State may deprive petitioner of his driver's license and vehicle registration *it must provide a forum for the determination of the question whether there is a reasonable possibility of a judgment being rendered against him as a result of the accident.* We deem it inappropriate in this case to do more than lay down this requirement. The alternative methods of compliance are several. Georgia may decide merely to include consideration of the question at the administrative hearing now provided, or it may elect to postpone such a consideration to the de novo judicial proceedings in the Superior Court. Georgia may

---

**2.** *Id.*

**3.** 47 O.S.1981 § 7–203.

**4.** 47 O.S.1981, § 7–601 et seq.

**5.** 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

**6.** 71 Okla.Op.A.G. 273 (1971).

**7.** 1976 Okla.Sess.Law c. 176.

decide to withhold suspension until adjudication of an action for damages brought by the injured party. *Indeed, Georgia may elect to abandon its present scheme completely and pursue one of the various alternatives in force in other States.*[6] Finally, Georgia may reject all of the above and devise an entirely new regulatory scheme. The area of choice is wide: we hold only that the failure of the present Georgia scheme to afford the petitioner a prior hearing on liability of the nature we have defined denied him procedural due process in violation of the Fourteenth Amendment.

---

[6] *The various alternatives include compulsory insurance plans, public or joint* public-private unsatisfied judgment funds, and assigned claims plans. See R. Keeton & J. O'Connell, After Cars Crash (1967)." [8]

The above quote from *Bell* and footnote 6 clearly point out that Georgia did not have a Compulsory Liability Insurance Law in effect at the time of *Bell.* If Georgia did have the Compulsory Insurance law the results of *Bell* would have been different.[9] Moreover *Bell* dealt with a statute purporting to suspend an uninsured motorist's license and registration after an accident regardless of fault. In our Financial Responsibility Act,[10] then in effect, fault was a prerequisite to suspension.[11] Such is no longer the case, however, since the Legislature in 1976 enacted Article VI of the Act.

Article VI of the Act, specifically § 7–601, provides:

"Every owner of a motor vehicle registered in this state, other than a licensed used car dealer, *shall, at all times,* maintain in force with respect to such vehicle security for the payment of loss resulting from the liability imposed by law for bodily injury, death and property damages sustained by any person arising out of the ownership, maintenance, operation or use of the vehicle. As used herein 'security' means:

1. A policy or bond meeting the requirements of Section 7–204 of this title;

2. A deposit of cash or securities having the equivalency of limits required under Section 7–204 of this title as acceptable limits for a policy or bond; or

3. Self-insurance, pursuant to the provisions of Section 7–503 of this title, having the equivalency of limits required under Section 7–204 of this title as acceptable limits for a policy or bond."

Despite the above language, in effect since December of 1976, Appellant asserts that he is exempt entirely from the Act by virtue of § 7–203.

Section 7–203 provides in pertinent part:

"The requirements as to security and suspension *in this Article* shall not apply:

. . . .

7. To the owner of a vehicle if at the time of the accident such vehicle was being operated without his permission, express or implied, or was parked by a person who had been operating such vehicle without such permission.

. . . ." (Emphasis supplied)

It is the Appellant's contention he is within the above exception. Under the provisions of § 7–201 [12] and § 7–301 [13] he contends he is not required to post security following an accident nor is he required to file proof of financial responsibility *for the future* as a result of the accident. However that may be, under the provisions of § 7–601, it appears that Appellant has allowed a motor vehicle to be operated on the highways of this state without liability insurance or proof of financial responsibility in lieu thereof. Consequently, 47 O.S.Supp. 1979, § 7–605 (providing for suspension) is applicable.

Section 7–605 provides:

---

8. 402 U.S. at 543–44, 91 S.Ct. at 1591 (emphasis added).

9. *Id.*

10. 47 O.S.1971, § 7–101 et seq.

11. See Okla.Op.A.G., *supra,* note 6.

12. 47 O.S.Supp.1979.

13. *Id.*

"—Every owner of a motor vehicle registered in this state who operates the vehicle or permits it to be operated in this state when he knows or should have known that he has failed to maintain security as required under Section 1 of this act [§ 7–601] shall be subject to suspension of license and registrations in accordance with the provisions of Section 7–206 of this title and such suspension shall remain in effect until the requirements of Section 7–212 of this title have been met."

Thus by § 7–605 Appellant is once again confronted by the suspension provisions of § 7–206. The question then becomes whether the exceptions of § 7–203 are applicable to an Article VI provision. To hold the provisions of § 7–203 applicable to Article VI would be contra to *Eason Oil Co. v. Corporation Commission,* Okl., 535 P.2d 283 (1975) wherein we held that "legislative acts are to be construed in such a manner as to reconcile different provisions and render them consistent and harmonious, and give intelligent effect to each."[14]

Furthermore, since 1908 we have utilized the doctrine in *pari materia.*[15] Generally, when statutes on the same subject matter are conflicting, they must be construed to give force and effect to each, since it will not be presumed that the legislature in the enactment of a subsequent statute intended to repeal an earlier statute, unless it has done so in express terms.[16]

This Act, if the provisions have the appearance of being in conflict, can be harmonious and logically construed so as to resolve those apparent conflicts. Simply limiting the exceptions of § 7–203 to the provisions of Articles II and III of the Act, as it was intended, would resolve the apparent conflict. Thus the question now becomes one of legislative intent. In *Territory ex rel. Swanson v. Clark,* 2 Okl. 82, 35 P. 882 (1894), we held "[i]n the construction of statutes it is a cardinal rule that the intent of the legislature must govern."[17] Consistent with this ancient axiom is *Riffe Petroleum Company v. Great National Corporation, Inc.,* Okl., 614 P.2d 576 (1980) wherein we held, "[t]he ascertainment of legislative intent is the cardinal rule of statutory construction."[18]

What remains then is to determine the statutory intent of the legislature in enacting Article VI of the Financial Responsibility Act. From the language of § 7–601, the legislature has clearly established a comprehensive compulsory liability insurance law. There can be no doubt that the legislative intent was to provide that no motor vehicle shall be operated on the highways of Oklahoma unless the vehicle is insured or "secured." See § 7–601. "Shall, at all times," as used in that section, cannot be interpreted so as to limit the Act to only those circumstances after an accident occurs due to the sole fault of the owner or driver of an uninsured automobile. The plain words of the statute must be controlling.[19]

The judgment of the district court is affirmed.

All of the Justices concur.

---

14. 535 P.2d at 286.

15. See *DeGraffenreid v. Iowa Land and Title Co.,* 20 Okl. 687, 95 P. 624 (1908).

16. *Abbott v. Board of Trustees of Oscar Rose Jr. College,* Okl., 586 P.2d 1098 (1978).

17. 2 Okl. at 83, 35 P. at 883.

18. 614 P.2d at 579, *see also, Stemmons, Inc. v. Universal C.I.T. Credit Corp.,* 301 P.2d 212, 216 (1956).

19. *Allgood v. Allgood,* Okl., 626 P.2d 1323 (1981).