2011 OK 20

Sheila MULFORD and Dewey Dover,
Plaintiffs/Appellees,

v.

Benjamin H. NEAL, Defendant,

and

American Farmers and Ranchers
Mutual Insurance Company,
Garnishee/Appellant.

No. 108179.

Supreme Court of Oklahoma.

March 15, 2011.

Rehearing Denied Oct. 17, 2011.

Mort G. Welch, Oklahoma City, Oklahoma, for garnishee/appellant.

Jack Mattingly, Jr., Seminole, Oklahoma, for plaintiffs/appellees.

PER CURIAM.

¶1 This dispute arose out of an automobile collision that occurred on April 27, 2007. The trial court awarded damages to the plaintiffs in a default judgment, and plaintiffs proceeded with a post-judgment garnishment against the insurer of the automobile driven by defendant. In the garnishment proceeding, the trial court entered summary judgment in favor of plaintiffs. The primary issue presented in this appeal from the garnishment judgment is whether there is a conflict between the endorsements to automobile liability insurance policies of defendant's mother and father specifically excluding their teenage son from coverage and the public policy expressed in Oklahoma's compulsory automobile liability insurance law. We conclude that the named driver exclusions in this case conflict with the public policy expressed in Oklahoma's compulsory insurance law and hold that the named driver exclusion may not be enforced against plaintiffs/appellees to defeat compulsory omnibus coverage.[1]

¶2 Additional questions presented on appeal are 1) did the trial court err in ruling that the vehicle driven by the defendant was covered by the mother's policy, and 2) did the trial court abuse its discretion in allowing plaintiffs to take issue with the garnishee's answer out of time. We answer these questions in the negative.

## I. The Case

¶3 The following facts are gleaned from the summary judgment record on appeal. In February of 2007, Oklahoma Farmers Union Mutual Insurance Company, now named American Farmers and Ranchers Mutual Insurance Company (AFR), issued automobile liability insurance policies to Hank Neal and to Diann Neal, to be in effect until August of 2007. Hank Neal's policy covered a 1992 GMC Sierra truck and a 1999 GMC Sierra truck, and it included two endorsements

---

1. Omnibus coverage means the named insured's automobile liability insurance covers all permissive operators of the insured motor vehicle.

*Hartline v. Hartline,* 2001 OK 15, ¶15, n. 22, 39 P.3d 765, 771; *O'Neill v. Long,* 2002 OK 63, ¶10, 54 P.3d 109, 112.

naming two children of Hank and Diann Neal, Benjamin and Emily, and stated that any claim would excluded from coverage when one of these two children was a driver. Benjamin's endorsement provided, in part:

in consideration of the premium for which the policy designated above is issued, it is agreed:

(1) that **BENJAMIN NEAL** shall not be permitted to drive any automobile insured thereunder, and

(2) that, in the event, the insurance afforded by this policy shall not apply with respect to any claim arising out of any accident which occurs while any automobile is being used by **BENJAMIN NEAL** as the driver of such automobile.

Diann Neal's policy covered a 1995 BMW sedan and included a nearly identical endorsement excluding any claim where Benjamin Neal is the driver. Her policy excluded three drivers, Emily, Benjamin, and Aubree, and the record indicates that all are minor children of Diann and Hank Neal.

¶ 4 The record shows that Benjamin Neal, born in September of 1989, is the son of Hank and Diann Neal, and was seventeen years old on the date of the collision. Hank and Diann Neal were divorced. While AFR asserted that Benjamin resided with his mother, at the summary judgment phase of the litigation the plaintiffs state that this fact is disputed and that "No reason exists why a minor cannot be a resident of both parents' homes." The decree of divorce states that Diann has custody of Benjamin.[2] Hank **permitted** his son, Benjamin, to drive his 1992 GMC Sierra truck, and Benjamin had use of the truck in February of 2007 when Hank purchased the automobile liability insurance policy covering the truck and which stated that Benjamin was excluded as a covered driver.

¶ 5 The automobile liability insurance policies contained the following statement:

**Required Oklahoma Statement:** Unless this is a certified policy issued in compli-

ance with Section 7–324 of Title 47 of the Oklahoma Statutes, the following statement, required by Oklahoma law, applies: "Liability insurance is provided in this policy in accordance with coverage required by the Compulsory Insurance Law of Oklahoma."

Neither of the policies nor any other summary judgment filings indicate that the involved liability insurance was issued as proof of financial responsibility under § 7–324 of Title 47 of the Oklahoma Statutes.

¶ 6 Diann Neal's liability insurance policy extended coverage to the named insured and residents of the named insured's household while using the covered automobile and non-owned automobiles. Diann Neal's policy defined a non-owned automobile to mean "an automobile or trailer not owned by or furnished for the regular use of any named insured or any resident of the same household, other than a temporary substitute automobile."

¶ 7 As to the use of the 1992 GMC Sierra truck, Benjamin Neal's affidavit states that, in February of 2007, his father gave him the truck to use as his personal vehicle and that he was the only driver after his father gave him the truck. Hank Neal's affidavit states that he gave the truck to his son Benjamin on April 15, 2005, for his own personal transportation and thereafter Benjamin was the only driver of the truck.

¶ 8 On April 27, 2007, seventeen-year-old Benjamin Neal was driving his father's 1992 GMC Sierra truck when it collided with a 1987 Nissan Maxima owned by Dewey Dover and driven by Sheila Mulford. The accident report in the summary judgment record allows inferences that the AFR insurance verification form issued for Hank Neal's policy was the proof of compulsory insurance on the 1992 GMC Sierra truck at the scene of the collision and that AFR's insurance verification form did not name Benjamin Neal as an excluded driver.[3]

---

**2.** The decree of divorce has various provisions for allocating certain expenses between the parties, but has no provision on allocating the expense of a child-operated motor vehicle or the insurance required for such operation.

**3.** We recognize that the accident report may not be used as evidence of negligence or due care. 47 O.S.2001 § 7–219. The inferences here go only to the proof of compulsory insurance provided at the scene of the accident.

¶ 9 On May 14, 2007, Sheila Mulford and Dewey Dover sued Benjamin Neal in Okfuskee County District Court. AFR did not defend Benjamin. However, the summary judgment record includes the correspondence between AFR and plaintiffs' counsel in July of 2007 wherein AFR denied any liability because Benjamin was an excluded named driver and plaintiffs' counsel asserted that such an exclusion is contrary to the compulsory insurance law. On October 15, 2007, the trial court granted a default judgment against Benjamin Neal in the amount of $75,000.00 for personal injury damages in favor of plaintiff Mulford and $15,000.00 in favor of plaintiff Dover, plus attorney fees and costs.

¶ 10 In February 2008, plaintiffs initiated a post-judgment garnishment against AFR to collect on their default judgments, and AFR answered the garnishment. AFR admitted that it issued the automobile liability insurance policies to Hank Neal and Diann Neal and that the policies were in effect at the time of the April 27, 2007 accident. AFR alleged that the policies provided no coverage when Benjamin Neal was the driver based on the named driver exclusion endorsements. AFR also alleged that Benjamin Neal was driving the 1992 GMC Sierra truck without permission and that the truck was not covered by Diann Neal's policy.

¶ 11 In August 2009, plaintiffs filed a motion for summary judgment, a motion to compel, and a supplement to their motion for summary judgment which admitted that Benjamin Neal was seventeen years old at the time of the collision. AFR filed a counter motion for summary judgment in September 2009, and the parties filed their respective responses and replies.

¶ 12 The plaintiffs argued in support of their motion for summary judgment that 1) the named driver exclusion frustrates the public policy expressed in the compulsory insurance law, 2) extant jurisprudence holds such exclusions invalid to the extent they deny the minimum compulsory coverage to innocent third parties, and 3) the Oklahoma Legislature has not plainly and unambiguously enacted the named driver exclusion as part of the compulsory insurance law. AFR argued in support of its motion for summary judgment that 1) the named driver exclusion is authorized by Oklahoma's compulsory insurance law and enforceable, 2) even without the named driver exclusion, the 1992 GMC Sierra truck was not an owned or non-owned vehicle covered by Diann Neal's policy, and 3) plaintiffs failed to take issue with the garnishment answer, thereby making AFR's non-liability conclusive under 12 O.S.2001 § 1177.

¶ 13 The district court granted summary judgment in favor of plaintiffs. In the journal entry of judgment, the district court 1) sustained plaintiffs' previous request to file out of time its notice of election to take issue with the garnishee's answer; 2) concluded that, as a matter of law, the named driver exclusion endorsements to the automobile liability insurance policies issued by AFR to Hank Neal and Diann Neal violate the Oklahoma compulsory insurance law; 3) determined that there was no substantial controversy as to any material fact and that, as a matter of law, plaintiffs were entitled to judgment; 4) entered judgment for Mulford in the total amount of $64,529.06, which included the policy limit of $25,000.00 under Hank Neal's policy and $25,000.00 under Diann Neal's policy plus post-judgment interest; and 5) entered judgment for Dover in the total amount of $18,791.18, which included the property damages, post-judgment interest, attorney fees, and other taxable costs.

¶ 14 AFR timely filed this appeal raising five assignments of error. AFR urged that the trial court erred 1) in allowing plaintiffs leave to file out of time their notice of election under 12 O.S.2001 § 1177; 2) in determining the named driver exclusion violates the compulsory insurance law; 3) in refusing to enforce the named driver exclusion under *Pierce v. Oklahoma Property & Casualty Ins. Co.*, 1995 OK 78, 901 P.2d 819, and Court of Civil Appeals' opinions following *Pierce;* 4) in following the reasoning in *McElmurry v. Garbow*, 2005 OK CIV APP 38, 116 P.3d 198; and 5) in finding that Benjamin Neal was an insured person under his mother's automobile liability insurance policy while using his father's truck. We retained the appeal.

## II. Financial Responsibility and Compulsory Insurance

¶ 15 In its petition in error, AFR urged that the named driver exclusion is consistent with the compulsory insurance law as pronounced in *Pierce v. Oklahoma Property & Casualty Ins. Co.*, 1995 OK 78, 901 P.2d 819. *Pierce* held that "a named driver exclusion which is based on the poor driving record of the excluded individual is consistent with our compulsory insurance laws." 1995 OK 78 at ¶ 15, 901 P.2d at 823. The poor driving record in *Pierce* was critical to the validity of a named driver exclusion from compulsory insurance. This is so because it is the fault-based financial responsibility statute,[4] 47 O.S.2001 § 7–324, that authorizes the named driver exclusion from a motor vehicle liability insurance policy. The compulsory insurance statutes[5] do not expressly authorize any exclusions, although they recognize exclusions authorized by existing law. 47 O.S.2001 § 7–600.

¶ 16 The fault-based financial responsibility statutes 1) require owners or operators of motor vehicles involved in an accident to deposit security for the damages, 47 O.S.2001 §§ 7–201, *et seq.*, as amended; and 2) upon conviction of an offense under the motor vehicle laws or bond forfeiture or upon failure to pay a judgment for damages arising out of the use of a vehicle, require the person to provide proof of financial responsibility. 47 O.S.2001 §§ 7–301, *et seq.*, as amended. Proof of financial responsibility may be a motor vehicle liability insurance policy. 47 O.S.2001 § 7–320(1).[6]

¶ 17 Section 7–324 of the fault-based financial responsibility statutes requires that a motor vehicle owner's liability insurance policy must provide coverage for the named insured and all permissive drivers. Section 7–324 sets the minimum amounts of required coverage at $25,000.00 for bodily injury to or death of one person, $50,000.00 for bodily injury to or death of two or more persons, and $25,000.00 for injury to or destruction of property of others.[7] 47 O.S.Supp.2004 § 7–324(B).

¶ 18 Section 7–324 permits specific exclusions from the liability insurance. The named driver exclusion was added in 1980 as a new subsection (c) to § 7–324,[8] which was renumbered as subsection (b)(3) in 1994.[9] Section 7–324(b)(3) provides that the owner's policy may include a separate endorsement between a named insured and the insurer to

4. Financial responsibility laws are described as fault-based because they apply to owners and operators of motor vehicles who have been in accidents which resulted in suspension or revocation of their driver's licenses and vehicle registrations. These persons, upon conviction of violation of a motor vehicle law or forfeiture of bond, are required to post security for damages and to prove future financial responsibility. The fault-based financial responsibility laws were initially enacted in the 1949 safety responsibility act, 1949 Okla. Sess. Laws, p. 347, and re-enacted in the 1961 comprehensive highway safety code as Articles II and III of Chapter 7 of Title 47 of the Oklahoma Statutes. 1961 Okla. Sess. Laws, ch. 10b. Although amended several times, the 1961 highway safety code is in effect today. In 2009, the Legislature last amended the financial responsibility laws. 2009 Okla. Sess. Laws, ch. 62. This opinion cites to the 2001 statutes unless a later version applies.

5. The Oklahoma Legislature originally enacted the compulsory insurance law in 1976 and codified it in the financial responsibility statutes as Article VI of Chapter 7 of Title 47 of the Oklahoma Statutes. 1976 Okla. Sess. Laws, ch. 176, (codified at 47 O.S.Supp.1976 §§ 7–601–7–606). In 1982, the Legislature made significant changes to the compulsory insurance statutes, and for the most part, the 1982 law remains in effect today. 1982 Okla. Sess. Laws, ch. 355. In 2009, the Legislature last amended the compulsory insurance statutes. 2009 Okla. Sess. Laws, ch. 62. This opinion cites to the 2001 statutes unless a later version applies.

6. Before the 2009 amendments, § 7–320 allowed an insurer's certificate of insurance or a bond as proof of financial responsibility. The 2009 amendments deleted the certificate of insurance and the bond and added the compulsory insurance law's security verification form defined in § 7–600 as proof of financial responsibility for purposes of fault-based financial responsibility laws. 2009 Okla. Sess. Laws, ch. 62, § 22.

7. These amounts are also in a new section of law codified at 47 O.S.Supp.2009 § 7–103, that defines "minimum liability insurance limits" for motor vehicle liability policies issued or renewed on or after April 1, 2005. 2009 Okla. Sess. Laws, ch. 62, § 1.

8. 1980 Okla. Sess. Laws, ch. 235, § 5.

9. 1994 Okla. Sess. Laws, ch. 181, § 11.

exclude any person or persons designated by name from coverage under the policy.[10]

■ ¶ 19 The underlying legislative intent of the fault-based financial responsibility statutes is to protect the public from persons who have previously been at fault in accidents or have poor driving records by requiring the owner and operator to maintain liability insurance and by requiring the insurer to cover all permissive uses of the insured vehicle. *Hibdon v. Casualty Corp. of America, Inc.*, 1972 OK CIV APP 3, ¶ 14, 504 P.2d 878 (Approved for Publication by the Oklahoma Supreme Court). The fault-based financial responsibility law allows some premium-cost containment with the named driver exclusion and the reimbursement provisions in § 7–324.[11] However, as will be seen, Oklahoma's compulsory insurance statutes are not fault-based and do not provide for premium-cost containment separate and apart from the fault-based financial responsibility law.

¶ 20 Originally enacted in 1976 [12] and extensively amended in 1982,[13] the compulsory insurance statutes, 47 O.S.2001 §§ 7–600 *et*

---

10. Section 7–324 was not amended in the 2009 legislative measure. 2009 Okla. Sess. Laws, ch. 62. Last amended in 2004 § 7–324 reads in part:

47 O.S.Supp.2004 § 7–324 (bold added).

(a) Certification. A "motor vehicle liability policy" as said term is **used in this article** shall mean an "owner's policy" or an "operator's policy" of liability insurance, certified as provided in section 7–321 or section 7–322 this title as proof of financial responsibility, and issued, except as otherwise provided in section 7–322 of this title, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.

(b) Owner's policy. Such owner's policy of liability insurance:

1. Shall designate by explicit description or by appropriate reference all vehicles with respect to which coverage is thereby to be granted; and

2. Shall insure the person named therein and any other person except as herein provided, as insured, using any such vehicle or vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such vehicle or vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such vehicle, as follows: Twenty-five Thousand Dollars ($25,000.00) because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, Fifty Thousand Dollars ($50,000.00) because of bodily injury to or death of two or more persons in any one accident, and Twenty-five Thousand Dollars ($25,000.00) because of injury to or destruction of property of others in any one accident.

3. **May by agreement in a separate written endorsement between any named insured and the insurer exclude as insured any person or persons designated by name from coverage under the policy.**

(c) Operator's policy. Such operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him, within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance.

(d) Required statements in policies. Such motor vehicle liability policy shall state the name and address of the named insured, the coverage afforded by the policy, the premium charged therefor, the policy period and the limits of liability, and shall contain an agreement or be endorsed that the insurance is provided thereunder in accordance with the coverage defined in this chapter as respects bodily injury and death or property damage, or both, and is subject to all the provisions of this title.

(e) Policy need not insure workmen's compensation. Such motor vehicle liability policy need not insure any liability under any workmen's compensation law nor any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment, other than domestic, of the insured, or while engaged in the operation, maintenance or repair of any such vehicle nor any liability for damage to property owned by, rented to, in charge of or transported by the insured.

. . .

(h) Reimbursement provision permitted. Any motor vehicle liability policy may provide that the insured shall reimburse the insurance carrier for any payment the insurance carrier would not have been obligated to make under the terms of the policy except for the provisions of this title.

11. Section 7–324(b)(3) in the fault-based financial responsibility statutes is the only statute that authorizes a named driver exclusion from automobile liability insurance. Implicit in the named driver exclusion, according to *Pierce v. Oklahoma Property and Casualty Ins. Co.*, 1995 OK 78 at ¶ 15, 901 P.2d at 823, is the intent to allow the contracting parties to exclude named persons to avoid costly premiums **in some circumstances.** *Pierce*, however, did not elaborate on the circumstances that would allow the exclusion other than a poor driving record.

12. 1976 Okla. Sess. Laws, ch. 176.

13. 1982 Okla. Sess. Laws, ch. 355.

*seq.*, as amended, require liability insurance in conjunction with the operation of a motor vehicle in this state.[14] Like the fault-based financial responsibility statutes, the compulsory insurance statutes require that the motor vehicle owner's liability insurance policy must provide omnibus coverage for all permissive uses. Unlike the fault-based financial responsibility statutes, the compulsory insurance statutes do not authorize any specific exclusions from the omnibus coverage, but the definition of the owner's policy does allow exclusions in accordance with existing law. Section 7–600 provides in part:

1. "Owner's policy". An owner's policy of liability insurance:

a. shall designate by explicit description or by appropriate reference all vehicles with respect to which coverage is thereby to be granted,

b. **shall insure the person named therein and insure any other person, except as provided in subparagraph c of this paragraph, using an insured vehicle with the express or implied permission of the named insured,** against loss from the liability imposed by law for damages arising out of the ownership, maintenance, operation or use of such vehicle,

c. **may provide for exclusions from coverage in accordance with existing laws,** and

d. shall be issued by an authorized carrier providing coverage in accordance with Section 7–204 of Title 47 of the Oklahoma Statutes.

2. "Operator's policy". An operator's policy of liability insurance shall insure the named person against loss from the liability imposed upon him by law for damages arising out of the operation or use by him of any motor vehicle not owned by him,

subject to the same limits of liability required in an owner's policy.

47 O.S.2001 § 7–600(1) and (2) (emphasis added).

¶ 21 The Legislature enacted our current compulsory insurance scheme in the 1982 amendments. It created the security verification form, defined it,[15] required every operator to carry an owner's or operator's security verification form while using the motor vehicle,[16] required the owner to surrender a security verification form to the motor license agent when registering the motor vehicle,[17] and made the failure to produce a security verification form to appropriate law enforcement a misdemeanor.[18] The 1982 amendments provided that the owner's policy must include a statement or endorsement that the policy is issued in accordance with the "Compulsory Insurance Law of Oklahoma." [19]

¶ 22 The legislative mandate of compulsory liability insurance on every motor vehicle operated on the highways of Oklahoma was clear in the 1976 enactment and the 1982 amendments. From its inception this Court refused to weaken the compulsory insurance mandate by applying the fault-based financial responsibility statutes to the compulsory insurance statutes. *Beavin v. State ex rel. Dept. of Public Safety*, 1983 OK 34, ¶ 14, 662 P.2d 299, 302; *Young v. Mid–Continent Casualty Co.*, 1987 OK 88, ¶ 11, 743 P.2d 1084, 1087.

¶ 23 This Court has often pronounced that the clearly articulated public policy underlying Oklahoma's compulsory insurance law is to establish a comprehensive compulsory liability insurance law for the benefit of the innocent victims of the negligent operation or use of motor vehicles in this state. *Beavin v. State ex rel. Dept. of Public Safety, supra.; Young v. Mid–Continent Casualty Co., supra; Thomas v. National Auto. Casualty*

14. 47 O.S.2001 § 7–600(4).

15. 47 O.S.Supp.1982 § 7–600(5).

16. 47 O.S.Supp.1982 §§ 7–602(B)(1) and 7–602.1. In 1986, the Legislature amended § 7–602.1, providing that an owner's security verification form may be used by the operator if the operator is not excluded from coverage and re-

quiring that any exclusion from the policy shall be included on the owner's security verification form. 1986 Okla. Sess. Laws, ch. 45.

17. 47 O.S.Supp.1982 § 7–602(B)(2).

18. 47 O.S.Supp.1982 § 7–606.

19. 47 O.S.Supp.1982 § 7–600.1(A).

*Ins.,* 1994 OK 52, 875 P.2d 424; *Tapp v. Perciful,* 2005 OK 49, 120 P.3d 480; and *Ball v. Wilshire Ins. Co.,* 2009 OK 38, 221 P.3d 717. We have often determined that provisions in a liability insurance policy which deny coverage to the general public are void as contrary to this statutorily articulated public policy, such as 1) excluding drivers under 25 years of age, *Young v. Mid–Continent Casualty Co., supra;* 2) excluding coverage outside a 200–mile geographical radius, *Equity Mutual Ins. Co. v. Spring Valley Wholesale Nursery,* 1987 OK 121, 747 P.2d 947; 3) excluding a named insured as a passenger, *Hartline v. Hartline,* 2001 OK 15, 39 P.3d 765; 4) excluding business automobiles, *Tapp v. Perciful, supra.;* and 5) excluding loaned automobiles. *Ball v. Wilshire Ins. Co., supra.* We have determined that the clearly articulated public policy of our compulsory insurance law overrides contrary private agreements that restrict the insurance coverage up to the statutory minimum limits of coverage: "The legislatively-declared imperative behind the Compulsory Liability Insurance Law is that a *minimum* amount of liability insurance be available for the protection of the general public." *Ball,* 2009 OK 38 at ¶ 14, 221 P.3d at 722.

¶ 24 The statutory requirements of a motor vehicle liability insurance policy under the fault-based financial responsibility law are different from those in the compulsory insurance law.[20] Because the compulsory liability insurance law does not specifically authorize the exclusion of named drivers as insured persons as does the fault-based financial responsibility law, these statutes dealing with motor vehicle liability insurance must be construed, as far as practical, to give an intelligent effect to each. *Sharp v. Tulsa County Election Bd.,* 1994 OK 104, ¶ 11, 890 P.2d 836, 840. Any construction of these statutes must be consistent with the underlying public policy to protect innocent third parties from the negligent uses of motor vehicles upon the public roadways.

¶ 25 Even though the compulsory insurance law provides no specific exclusions from the required omnibus liability insurance coverage, it expressly allows for exclusions provided in existing law, 47 O.S.2001 § 7–600(1)(c), and requires any person excluded from coverage **to be named on the owner's security verification form.** 47 O.S.2001 § 7–602.1.[21] The existing fault-based financial responsibility law allows exclusion of a named person by endorsement to an automobile liability insurance policy. 47 O.S.Supp. 2004 § 7–324(b)(3). A reading of these provisions to give intelligent effect to each in light of the underlying public policy is to say that any owner's policy under § 7–324 that has an endorsement excluding a named driver from coverage may satisfy the requirements of an owner's policy under the compulsory insurance law; and if so, the excluded named driver **must** be identified on the owner's security verification form.[22]

**20.** The different requirements of an owner's motor vehicle liability policy in the fault-based financial responsibility law and in the compulsory insurance law were not changed in the 2009 amendments. 2009 Okla. Sess. Laws, ch. 62. Although the 42 sections in the 2009 legislative measure made numerous amendments to the fault-based financial responsibility statutes and the compulsory insurance statutes, there were no amendments to § 7–324, and there were no substantive amendments to the requirements of an owner's policy in § 7–600. The primary change made in the 2009 legislative was to delete the various provisions that required suspension of the motor vehicle registration and tag as a penalty for failure to comply with the fault-based financial responsibility laws and the compulsory insurance law. It also deleted the provisions that allowed a bond to be proof of financial security and deleted the insurer's certificate of insurance as proof of financial responsibility. The 2009 legislation added the security verification form as proof of financial responsibility in lieu of the insurer's certificate and added a definition of motor vehicle liability policy which clearly requires compliance with the financial responsibility laws up to the required minimum liability insurance limits. Many of the amendments in the 2009 legislation removed repetitive provisions, clarified other provisions, and updated the statutory language.

**21.** Section 7–602.1 states in part that "Any such exclusions from said policy shall be included on the owner's security verification form." The 2009 legislation made only housekeeping changes to § 7–600(1) and § 7–602.1.2009 Okla. Sess. Laws, ch. 62, §§ 28 and 34.

**22.** The summary judgment record does not show that AFR's policies issued to Hank Neal and Diann Neal were issued in accordance with § 7–324 or that the security verification form gave notice that Benjamin Neal was excluded as an insured.

¶ 26 In *Young v. Mid–Continent Casualty Co.*, 1987 OK 88, 743 P.2d 1084, the Court expressly held that an automobile liability insurance policy exclusion based on the age of the driver was contrary to a public policy that protected innocent victims from the negligent operation of a motor vehicle. In *Young* coverage was excluded for the operation of the insured vehicle if operated by any person under the age of twenty-five (except the named insured) who was not a relative and a resident of the same household as the named insured. *Id.* 743 P.2d at 1084–1085. In *Young* the insurance carrier argued that the under-age exclusionary clause was bargained for, effective, and enforceable. *Id.* 743 P.2d at 1087.[23]

¶ 27 We later relied on *Young* when we explained that compulsory liability insurance was for the public purpose of protecting innocent drivers from the use of automobiles by financially irresponsible persons who operate vehicles in a negligent manner. *Thomas v. National Auto. Casualty Ins.*, 1994 OK 52, 875 P.2d 424, n. 14, 427. We stated the following.

> Oklahoma's Financial Responsibility Act [Act] requires that owners maintain liability insurance for their automobiles. The compulsory liability insurance article in the Act mandates that *all vehicle owners* keep in force liability insurance or other authorized security at not less than the minimum required by § 7–204 unless a vehicle is exempt by statute. The Act's principal purpose is to protect the *public* using the highways from financial hardship which may result from the use of automobiles by financially irresponsible persons. Any vehicle operating on the Oklahoma highways must hence be secured against liability to innocent victims of the negligent operation of insured vehicles. This clearly articulated public policy of our compulsory insurance law plainly overrides contrary private agreements that restrict coverage whenever the contractual strictures do not square with the purpose of the Act.

*Thomas v. National Auto. Casualty Ins.*, 1994 OK 52, 875 P.2d 424, 427 (notes and authority omitted and emphasis in original).

¶ 28 In the case before us today, the insurance carrier argued that teenagers, as a class of drivers, could be excluded from the compulsory coverage because, as a class, they are a high-risk category. Teenagers, as a class, are not well-known for their financial responsibility. So then, the essence of AFR's argument is that a class of drivers with a higher degree of negligent operation of motor vehicles and a greater degree of financially irresponsibility may be excluded from a compulsory law designed to protect innocent drivers from financially irresponsible and negligent drivers. AFR argues this result is permissible because law (*Pierce*) permits a bargained-for exclusion. In summary, AFR contends that since teenagers, as a class, have a poor driving record when compared to non-teenagers, then a specifically named driver may be excluded *solely* on the basis of membership in that age-based class.

■ ¶ 29 Hank Neal and AFR agreed that Benjamin Neal would not be covered by Hank's insurance on the 1992 GMC Sierra truck, and similarly, Diann Neal and AFR agreed to exclude Benjamin Neal from her liability coverage. These private insurance policies were issued under the compulsory insurance scheme which has a primary purpose "to protect members of the public from the disastrous financial consequences of using the roadways in our automobile-dependent society." *Harkrider*, 2000 OK 94 at ¶ 18, 24 P.3d at 829–830. Our compulsory insurance scheme has effectively "transformed what was a private insurance arrangement into a quasi-public obligation." *Id.* 24 P.3d at 830.

¶ 30 In *Hartline v. Hartline*, 2001 OK 15, 39 P.3d 765, we stated that "[e]ven in the absence of a violation of a law's express provision, an exclusion may nonetheless be invalid for nonconformity to the *policy of the*

---

23. We also noted in *Young* opinions where a "family exclusion" and a "members of household exclusion" were struck down by other courts. *Id.* 743 P.2d at n. 11, 1087. We later held that household and named insured/insured exclusions are invalid when they operate to deny all coverage to an injured resident family member. *Hartline v. Hartline*, 2001 OK 15, ¶ 20, 39 P.3d 765, 773.

law." *Id.* at ¶ 16, 39 P.3d at 771. In *Tapp v. Perciful*, 2005 OK 49, 120 P.3d 480, we noted that the scope of *Pierce* is a "very narrow exclusion ... of a specifically named driver." *Id.* at ¶ 20, 120 P.3d at 483. We have refused to extend the *Pierce* holding to exclude an unlicensed driver when the named insured did not disclose that the unlicensed driver was living in her household. *Harkrider v. Posey*, 2000 OK 94, ¶ 17, 24 P.3d 821, 829. More recently, we said that *Pierce* recognized a very narrow exception to the rule that every vehicle operated in this state shall be secured against liability to innocent victims of the negligent operation of insured vehicles. *Ball v. Wilshire Ins. Co.*, 2009 OK 38 at n. 21, 221 P.3d at 721–722.

¶ 31 Our express holding in *Pierce* states that "We hold that a named driver exclusion *which is based on the poor driving record of the excluded individual* is consistent with our compulsory liability insurance laws." *Pierce*, 901 P.2d at 823 (emphasis added). The bargained-for exclusion was tied to particularized conduct of a specific individual which had an impact upon the insurer's risk. In the case before us, the exclusion is not based upon particularized conduct of Benjamin, but on Benjamin's membership in a class of drivers of a certain age.[24]

¶ 32 The protection of the public from the financial hardship which may result from the use of automobiles by financially irresponsible persons requires that *any vehicle operating on the roads of this state* must be secured against liability to innocent victims in the event harm occurs from its negligent operation. *Hartline v. Hartline*, at ¶ 16, 39 P.3d at 771–772 (emphasis in original and citations omitted). *Due to the public policy of protecting innocent drivers from the use of automobiles by financially irresponsible persons who operate vehicles in a negligent manner, we decline to extend the holding of Pierce to allow a bargained-for exclusion based solely upon a named driver's age when that driver is under eighteen years of age.*

¶ 33 AFR's position is, essentially, that parents of teenagers should be allowed to purchase motor vehicle insurance without also paying for insurance to cover their teenage children as drivers. We agree *hypothetically* that *responsible* parents of teenagers *should* be allowed to purchase motor vehicle insurance without also paying for insurance to cover their teenage children as drivers *when the teenagers are not drivers*. A teenage licensed driver between the age of sixteen and eighteen years of age has that license because his or her parent, legal custodian, or guardian has expressly allowed that teenager to obtain a driver's license.[25] Diann Neal had custody of Benjamin when the collision occurred, and as a responsible parent could have objected to Benjamin having a driver's license without the required insurance.[26] But we also note that cases have come before our appellate courts showing all too well that there are parents of teenagers who act irresponsibly by providing a motor vehicle to a teenager to drive without the required insurance for that teenager as a driver. In issuing and purchasing compulsory liability insurance, the contracting parties do not enjoy the full range of freedom-of-

---

**24.** We do not address in this opinion the circumstance of a teenage driver being excluded because of his or her poor driving record, and whether *Pierce* allows such exclusion.

**25.** 47 O.S.Supp.2010 § 6–103 states in part the following.
"A. Except as otherwise provided by law, the Department of Public Safety shall not issue a driver license to:
1. Any person who is under eighteen (18) years of age, except that the Department may issue a Class D license to any person who attains sixteen (16) years of age on or after August 15, 2000, and meets the requirements of Sections 6–105 and 6–107.3 of this title;
2. Any unemancipated person who is under eighteen (18) years of age and whose custodial

legal parent or legal guardian does not approve the issuance of a license as required by Section 6–110.2 of this title or objects to the issuance of a license or permit by filing an objection pursuant to Section 6–103.1 of this title;"
The 2001 version of this statute stated that the license "shall not issue" to an unemancipated minor under eighteen years of age whose custodial parent or guardian "objects to the issuance of a license or permit." 47 O.S.2001 § 6–103(A)(2). In 2006 this language was amended and added the requirement of express approval for the license. 47 O.S.Supp.2006 § 6–103 (eff. June 8, 2006).

**26.** See 47 O.S. § 6–103 explained in note 25 *supra*.

contract principles. *Harkrider*, at ¶ 19, 24 P.3d at 830. *Public policy requires innocent victims of unemancipated negligent teenage drivers to be protected from such drivers by the compulsory insurance law.* The private motor vehicle liability insurance contract may not defeat the mandated public protection. The insurer cannot escape its liability for the minimum amount of liability insurance mandated by the compulsory insurance law when an innocent third party is negligently injured by an insured or an insured motor vehicle, and a parent purchasing insurance cannot escape his or her responsibility from purchasing insurance for his or her unemancipated child under eighteen years of age who drives a motor vehicle in this State. We decline to act today as a Legislature and determine under what conditions an *unemancipated teenager with a driver's license* could be properly excluded from the parent's motor vehicle insurance policy.

¶ 34 We conclude that the named driver exclusions in this case are inconsistent with the clear public policy in Oklahoma's compulsory insurance law. We hold that the named driver exclusion in the Hank Neal policy and in the Diann Neal policy may not be enforced against plaintiffs/appellees to defeat compulsory omnibus coverage up to the minimum amount required by law.

¶ 35 Our conclusion and holding herein leaves the narrow exclusion in *Pierce* intact. Relying on *Pierce*, the Court of Civil Appeals has upheld named driver exclusions similar to the exclusion here, but those opinions are not instructive.[27] We refuse to extend the narrow holding in *Pierce*, and we specifically limit the application and effect of our holding

in *Pierce* to those named driver exclusion endorsements under Section 7–324(b)(3) of Title 47 of the Oklahoma Statutes.

### III. The trial court did not err in its summary adjudication against AFR on Diann Neal's compulsory insurance policy.

█ ¶ 36 In the trial court, AFR and the plaintiffs moved for summary judgment asserting that there were no disputed material facts and that summary judgment was proper. One argument presented by AFR to support summary judgment was that Diann Neal's policy did not cover Hank Neal's 1992 GMC Sierra truck because it was furnished for Benjamin Neal's regular use. The trial court did not enter a specific ruling on this argument. However, in granting summary judgment against AFR on both Hank Neal's policy and Diann Neal's policy, the trial court implicitly rejected AFR's "regular use" argument and decided that the 1992 GMC Sierra truck was a non-owned automobile covered under Diann Neal's liability insurance.

¶ 37 In its petition in error, AFR preserved the issue of whether Hank Neal's 1992 GMC Sierra truck was a non-owned vehicle insured under Diann Neal's liability insurance policy. As we have already stated, Diann Neal's policy explicitly insured the use of owned and non-owned automobiles, and it defined "non-owned automobile" to mean "an automobile or trailer not owned by or furnished for the regular use of any named insured or any resident of the same household, other than a temporary substitute automobile."

27. AFR urged that we should follow *Pierce* and the Court of Civil Appeal opinions in *O'Brien v. Dorrough*, 1996 OK CIV APP 25, 928 P.2d 322, and *Robinson v. GEICO*, 1996 OK CIV APP 130, 928 P.2d 971. The Court of Civil Appeals opinions did not involve innocent third-party claims for compulsory insurance. *O'Brien* involved an uninsured motorist claim by the excluded named driver who was involved in an accident caused by an uninsured motorist. *Robinson* involved a claim for medical payments from his mother's insurer by the excluded named driver who was involved in an accident caused by the other driver.
On the other hand, plaintiffs/appellees urged that the *Pierce* holding should not be extended under

*McElmurry v. Garbow*, 2005 OK CIV APP 38, 116 P.3d 198. *McElmurry* distinguished *Pierce* because Garbow was the only named insured and also an excluded named driver. The case of *Alternative Medicine of Tulsa, Inc. v. Cates*, 2006 OK CIV APP 65, 136 P.3d 716, involved uninsured motorist claims for innocent third-party passengers in the insured vehicle driven by the owner's son who was the excluded named driver. The trial court ruled in favor of the insurer, Progressive; and the Court of Civil Appeals recognized that *Pierce* upheld the named driver exclusion but reversed the trial court under *Hartline v. Hartline*, 2001 OK 15, 39 P.3d 765.

¶ 38 On summary judgment, neither AFR's statement of material facts not in dispute, nor that of plaintiffs, included a statement that the 1992 GMC Sierra truck owned and insured by Hank Neal was furnished to Benjamin for his regular use. To prove Benjamin's use of the truck, AFR relied on affidavits from Hank Neal and Benjamin Neal. Benjamin's affidavit stated that his father gave him the 1992 GMC Sierra truck in 2007 to use as his personal vehicle, and Hank's affidavit stated that he gave Benjamin the truck in 2005 for his personal transportation. While both affidavits express that Benjamin was the only driver of the truck after Hank gave Benjamin the truck, they conflict as to the calendar year that Benjamin's father gave him the truck. AFR argued that the affidavits established that the truck was Benjamin's "sole mode of transportation once his father acquired the newer pickup," and "[t]hus, the pickup was furnished to Ben, a resident of Diann's household, for his regular use and does not qualify as a 'non-owned automobile.'" AFR further argued that since the 1992 GMC Sierra truck was neither an owned nor a non-owned automobile, the driver is not an insured under Diann Neal's liability insurance as a matter of law.

¶ 39 The question of "regular use" of an automobile is grounded in fact.[28] AFR's affidavits do not set forth facts as to Benjamin's use of the truck, nor do they support an inference that the truck was used by Benjamin as his sole mode of transportation. As to this argument, AFR had the burden of proof, *Oklahoma Farm Bureau Mutual Ins. Co. v. Tyra*, 1952 OK 286, ¶ 11, 247 P.2d 969,

971, which it totally failed to meet. AFR did not present the trial court with any evidence showing Benjamin's mode or modes of transportation, the availability of the truck for Benjamin's use, Benjamin's actual use of the truck, the frequency of Benjamin's use of the truck, where Benjamin used the truck, where the truck was garaged, or many other factors that might be relevant to the "regular use" of an automobile.

¶ 40 The undisputed material facts before the trial court on summary judgment were that Diann Neal had legal custody of Benjamin Neal, and that when the accident occurred, Benjamin was driving a truck owned and insured by his father, Hank Neal, who did not reside in Diann Neal's household. Under these undisputed material facts, Benjamin, *an unemancipated minor*, was driving a "non-owned automobile" and he was an insured under his mother's compulsory insurance policy.[29] We hold the trial court did not err in ruling, as a matter of law, that the 1992 GMC Sierra truck driven by Benjamin Neal on April 22, 2007, was covered by Diann Neal's compulsory liability insurance policy.

## IV. The trial court did not abuse its discretion when it allowed plaintiffs to take issue with the garnishee's answer out of time.

■■■ ¶ 41 On summary judgment, AFR urged that plaintiffs failed to take issue with the facts set out in its answer, and by operation of 12 O.S.2001 § 1177, AFR's non-liability became a conclusive fact.[30] Therefore,

---

28. Generally, whether a non-owned automobile is furnished to an insured for regular use is a fact-intensive issue, and the facts to be considered include the nature and purpose of the use, availability of the vehicle, restrictions on the use, and frequency of the use. 8 *Couch on Insurance* 3 rd, § 118.40 (Rush, ed., 2005). The question of what facts will prove that a non-owned automobile is furnished for regular use has not been decided by this Court in a published opinion, nor have we decided that provisions in an automobile liability insurance policy excluding "non-owned automobiles furnished for regular use" are consistent with the compulsory insurance law. Those issues are not before us today, and nothing in this opinion is intended to address those issues.

29. The summary judgment trial court treated AFR's "regular use" argument as presenting a question of law. The trial court properly construed the meaning of the exclusionary language "furnished for regular use" against AFR under the established principle of contract interpretation that an insurance policy is a contract of adhesion, and as such, ambiguities and uncertainties in the exclusionary words must be construed strictly against the insurer. *Haworth v. Jantzen*, 2006 OK 35, ¶ 19, 172 P.3d 193, 198.

30. AFR's non-liability is grounded in the named driver exclusion endorsements and the non-owned vehicle provisions in Diann Neal's insurance policy. These are not allegations of fact. The validity of an exclusion from compulsory

AFR argued that the trial court abused its discretion when it allowed plaintiffs to take issue with AFR's answer to the garnishment.

¶ 42 Since 1995, § 1177 has provided that the truth of the facts in a garnishee's answer with reference to the garnishee's liability to the defendant shall be conclusive unless the judgment creditor takes issue with those facts within twenty days from whichever is last in time: 1) the filing of the garnishee's answer, 2) the taking of garnishee's deposition, or 3) receipt of the garnishee's answers to interrogatories.[31] Before the 1995 amendments, § 1177 provided that the truth of such facts shall be conclusive unless an election to take issue with the garnishee's answer is filed within twenty days after the answer is filed. 12 O.S.1991 § 1177.

¶ 43 In construing the pre–1995 version of § 1177, this Court recognized that statutes fixing time intervals during which pleadings may be filed are generally construed to fix a limit beyond which the pleading may not be filed without permission of the court, and determined that permission to file a notice of election to take issue with a garnishee's answer is left to the sound discretion of the trial court. *Underwriters v. Cannon*, 1975 OK 103, ¶¶ 13–14, 538 P.2d 210, 212. This Court also decided that the timely filing of a notice of election to take issue with a garnishee's answer is not jurisdictional, *Spears v. Preble*, 1983 OK 8, ¶ 14, 661 P.2d 1337, 1341; that the exercise of the trial court's discretion to grant leave to file out of time will not be disturbed unless it is plainly erroneous and an abuse of discretion, *Underwriters v. Cannon*, 1975 OK 103 at ¶¶ 13–14, 538 P.2d at 212; and that a grant of leave to take issue with a garnishee's answer is an abuse of discretion where the late filing resulted in prejudice to the garnishee or caused the parties to receive less than a full civil trial. *Spears v. Preble*, 1983 OK 8 at ¶ 14, 661 P.2d at 1341; *Underwriters v. Cannon*, 1975 OK 103 at ¶¶ 12–13, 538 P.2d at 212; and *Educators Automobile Ins. Co. v. Jones*, 1967 OK 120, *Syllabus*, No. 3 and ¶ 17, 428 P.2d 277, 281.

¶ 44 Before and after the 1995 amendments, the statute provided and still provides a procedure to resolve a judgment creditor's dispute of the facts alleged in the garnishee's answer. By providing additional time intervals in which the judgment creditor may plead, the 1995 amendments altered the time for disputing the garnishee's alleged facts without the court's permission, but those amendments did not disturb the trial court's discretion to allow the filing of the pleading out of time.

¶ 45 AFR has not persuaded us to depart from the established rules governing the trial court's grant of leave to file out of time the pleading to take issue with the garnishee's alleged facts. Under the established rules, AFR must show that it was prejudiced by the trial court permitting plaintiffs to take issue with AFR's answer out of time, or that the late filing interfered with its right to a trial on its non-liability contentions and arguments. AFR failed in both respects. Even before the garnishment proceeding, AFR had notice that the plaintiffs resisted enforcement of the named driver exclusion. Accordingly, AFR has not demonstrated that the trial court abused its discretion when it granted leave to file the notice of election to take

liability insurance is a question of law, *Hartline*, 2001 OK 15 at ¶ 5, 39 P.3d at 767, and construction of an insurance contract is a question of law. *BP America, Inc. v. State Auto Property & Casualty Ins. Co.*, 2005 OK 65, ¶ 6, 148 P.3d 832, 835. AFR's non-liability hinges on these questions of law, and the garnishee's legal conclusions alleged in its answer are not subject to the operation of 12 O.S.2001 § 1177.

**31.** 1995 Okla. Sess. Laws, ch. 338, § 8. The current version of the statute, codified at 12 O.S.2001 § 1177, provides in part:

The answer of the garnishee shall in all cases be conclusive of the truth of the facts therein stated, with reference to the garnishee's liability to the defendant unless the judgment creditor shall within twenty (20) days from the receipt of the garnishee's answer, from the date of the deposition of the garnishee, or from receipt of the garnishee's answers to interrogatories, whichever is later, serve upon the garnishee or the garnishee's attorney of record personally or by certified mail, return receipt requested, a notice in writing that the judgment creditor elects to take issue with the garnishee's answer; in which case, the issue shall stand for trial as a civil action in which the affidavit on the part of the judgment creditor shall be deemed the petition and the garnishee's answer the answer thereto. . . .

issue with the garnishee's answer, and we will not disturb the trial court's ruling.

### V. Summary

¶ 46 In summary, the fault-based financial responsibility law provides that an owner's liability insurance policy used as proof of financial responsibility after conviction of an offense under the motor vehicle laws or forfeiture of the bond or after the failure to pay a judgment for damages arising out of the use of the vehicle 1) must provide omnibus coverage, 2) may exclude any named person from coverage, and 3) may provide for reimbursement to the insurer of any payment that the insurer would not be obligated to make under the policy except for the financial responsibility statutes. 47 O.S.Supp. 2004 § 7–324. The compulsory insurance law does not specifically authorize any exclusion from compulsory insurance coverage, although it expressly allows for exclusions provided in existing law, 47 O.S.2001 § 7–600(1)(c), and requires any person excluded from coverage be named on the owner's security verification form. 47 O.S.2001 § 7–602.1. Giving effect to each, these statutes allow an owner's policy with a named driver exclusion endorsement issued under § 7–324 to satisfy the requirements of an owner's policy under the compulsory insurance law, *except when such violates public policy.*

¶ 47 The application of *Pierce v. Oklahoma Property & Casualty Ins. Co.,* 1995 OK 78, 901 P.2d 819, is limited to those policies with named driver exclusion endorsements due to a poor driving record as permitted in Section 7–324 of Title 47 of the Oklahoma Statutes. The named driver exclusions in this case are not consistent with the public policy expressed in Oklahoma's compulsory insurance law and may not be enforced against plaintiffs/appellees to defeat the compulsory omnibus coverage.

¶ 48 Hank Neal clearly and admittedly allowed and permitted his son, Benjamin Neal, to drive his insured truck. The issue before this Court is one of public policy expressed in our compulsory insurance law and the statutorily required minimum liability insurance protection of innocent third parties. The plaintiffs were entitled to summary judgment against the garnishee on the Hank Neal policy and the Diann Neal policy up to the minimum amount of liability insurance mandated for the protection of the general public, as a matter of law. The garnishee did not demonstrate it was prejudiced when the trial court allowed plaintiffs to plead out of time. The judgment of the District Court is affirmed.

¶ 49 COLBERT, V.C.J., WATT, EDMONDSON, REIF, GURICH, JJ.— Concur.

¶ 50 COMBS, J., Concurs in Result.

¶ 51 TAYLOR, C.J., KAUGER, WINCHESTER, JJ.—Dissent.

KAUGER, J., with whom Taylor, C.J., and Winchester, J., join, dissenting:

¶ 1 I agree with the majority opinion that Oklahoma law mandates that every owner of a motor vehicle registered in this state shall maintain insurance. I do not agree with the majority's expansion of public policy which is in direct contravention of what is expressly stated in a statute.

¶ 2 This cause involves two statutes. The first, 47 O.S. Supp.2009 § 7–600, concerns compulsory insurance, and it protects the public by requiring insurance for damages arising out of the ownership, maintenance, operation or use of a motor vehicle.[1] One

---

**1.** Citation is to the current version of 47 O.S. Supp.2009 § 7–600 because the pertinent portions of the statute have not changed since its inception in 1982, Section 7–600 provides in pertinent part:
As used in Section 7–600 et seq. of this title:
1. 'Owner's policy' means a policy of motor vehicle liability insurance which:
a. shall designate by explicit description or by appropriate reference all vehicles with respect to which coverage is thereby to be granted,
b. shall insure the person named therein and insure any other person, except as provided in subparagraph c of this paragraph, using an insured vehicle with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, operation or use of the vehicle,
c. may provide for exclusions from coverage in accordance with existing laws, and. . . .

exception is that a policy owner may expressly provide for exclusion from coverage "in accordance with existing laws." [2]

¶3 The existing law is found at 47 O.S. Supp 2004 § 7–324, which concerns financial responsibility and proof of coverage and contents. Section 7–324 provides that a motor vehicle policy owner "may by agreement in a separate written endorsement between any named insured and the insurer exclude as insured any person or persons designated by name from coverage under the policy." [3]

¶4 Notwithstanding the express statutory allowed exception, the majority re-writes § 7–600 to provide that a policy owner may expressly provide for exclusion from coverage "except when such violation violates public policy." The majority then concludes that because teenagers, as a class, have a poor driving record, and parents of teenagers act irresponsibly by providing a motor vehicle to a teenager to drive without the required insurance for that driver, it would be a violation of public policy to allow the parties negotiating for an insurance contract to agree to expressly exclude a named teenager from coverage. The result being, the irresponsible parents have never paid the premium for the teenager's coverage, but the insurance company is forced to pay the statutory minimum liability coverage.

¶5 This rationale contravenes our previous pronouncements. For instance, in *Ball v. Wilshire Ins. Co.*, 2009 OK 38, ¶15, 221 P.3d 717, the Court recently noted:

> Ball argues that the Compulsory Liability Insurance Law completely nullifies an exclusionary clause that violates its mandate of minimum liability coverage. She argues that if a person would have been a policy-defined insured under the terms of the omnibus clause but for the exclusion, he or she becomes such by reason of the exclusion's nullification. The policy must then be treated as if the exclusion never existed and the wrongly excluded person becomes entitled to the performance of the insurer's other contractual obligations to its insured, including a defense. We disagree. (Citations omitted.)

¶6 In *Tapp v. Perciful.*, 2005 OK 49, ¶20, 120 P.3d 480, the Court examined the litany of cases wherein we have stricken down exclusions for violating public policy [most of the same cases referenced by the majority in this cause], but noted that:

> The very narrow exclusion that this Court has recognized is the exclusion of a specifically-named driver, which is recognized by our compulsory liability insurance law. *Pierce v. Oklahoma Property & Cas. Ins. Co.*, 1995 OK 78 ¶15, 901 P.2d 819, 823.

¶7 In *Pierce v. Oklahoma Property & Casualty Ins. Co.*, 1995 OK 78, 901 P.2d 819 the Court held that an insurer which specifi-

---

**2.** Title 47 O.S. Supp.2009 § 7–600, see note 1, supra.

**3.** Again, references are to the current version of 47 O.S. Supp.2004 § 7–324, but the named exclusions provision first appeared in 1980, H.B. 1746, c. 235 § 5. Section 7–324 provides in pertinent part:

a) Certification. A 'motor vehicle liability policy' as the term is used in this article shall mean an 'owner's policy' or an 'operator's policy' of liability insurance, certified as provided in Section 7–321 or Section 7–322 of this title as proof of financial responsibility, and issued, except as otherwise provided in Section 7–322 of this title, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.
(b) Owner's policy. Such owner's policy of liability insurance:
1. Shall designate by explicit description or by appropriate reference all vehicles with respect to which coverage is thereby to be granted; and

2. Shall insure the person named therein and any other person except as herein provided, as insured, using any such vehicle or vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such vehicle or vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such vehicle, as follows: Twenty-five Thousand Dollars ($25,000.00) because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, Fifty Thousand Dollars ($50,000.00) because of bodily injury to or death of two or more persons in any one accident, and Twenty-five Thousand Dollars ($25,000.00) because of injury to or destruction of property of others in any one accident.
3. May by agreement in a separate written endorsement between any named insured and the insurer exclude as insured any person or persons designated by name from coverage under the policy....

cally excludes a certain person from coverage under an insurance policy may not be held liable for the damages caused by the negligent entrustment if the excluded person does, in fact, drive the vehicle. In other words, when it comes to purchasing insurance, you get what you pay for—nothing more, nothing less. The *Pierce* Court said:

¶ 20 Other courts which have considered the precise issue of whether a named driver exclusion precludes coverage for negligent entrustment have unanimously agreed that it does. Each relied on the specific language of the policy, and determined that **to permit liability for negligent entrustment of a vehicle to the driver named in the exclusion would be forcing an insurer to accept a risk not bargained for and for which no additional premium had been paid.** 'If the insurer of the family car were still liable under the policy if the excluded driver operates the vehicle, on a theory of negligent entrustment by the non-excluded insured spouse, the purpose of the named driver exclusion would be defeated.' (Citations omitted) (Emphasis supplied).

¶ 8 *Pierce* did not hold that only reckless drivers may be specifically excluded from insurance policies. Rather, it expressly held that parties contracting for insurance may agree to specifically exclude a named person and avoid paying premiums because that person is excluded from coverage. If a parent chooses to specifically exclude a teenager from insurance coverage, so be it. If that same parent, then permits the excluded teenager to drive, then it is the parent who is exposed not only to criminal liability, but also potentially limitless liability for the damages caused by the uncovered, unauthorized teenage driver.

¶ 9 Neither *Pierce* nor any of our previous cases mean that a parent may choose; to specifically exclude a teenager from cover-

age; to allow the teenager to illegally drive; and expect the insurance company to be liable for the damages caused by the unlawful teenage driver without paying any insurance premiums. In fact, all of our previous cases cited by the majority opinion involve excluding an entire class of drivers—drivers under the age of 25,[4] drivers outside a 200–mile radius,[5] a named insured as a passenger,[6] business automobiles,[7] or loaned automobiles.[8] It then attempts to create a similar class here—that of teenage drivers. The problem here is that this policy did not expressly exclude an "entire class of all teenage drivers." Rather, the father's policy expressly excluded two named individuals [Benjamin and Emily], as 47 O.S. Supp. § 7–324 [9] expressly allows, who happened to be a teenagers and which additional premiums had never been paid to cover. The mother's policy excluded three named children [Emily, Benjamin and Aubree]. Without a doubt the parents, by excluding their children and then allowing them to drive, violated the compulsory insurance laws.

¶ 10 Nevertheless, the result under the facts of this case is that the parents have received free insurance coverage for their teenager and that the cost will be paid via increased insurance rates. The majority's holding should at least be done prospectively. This would allow insurers to examine their rates if express, non-paid for exclusions of insurance coverage are no longer effective in Oklahoma.

WINCHESTER, J. with whom TAYLOR, C.J. and KAUGER, J. join, dissenting:

¶ 1 The plaintiffs filed a lawsuit after an automobile accident on April 27, 2007. At that time, the defendant was a minor, and both parents had excluded him from coverage in their liability insurance policies. The statutes in effect at the time of the accident,

---

**4.** *Young v. Mid–Continent Casualty Co.*, 1987 OK 88, ¶ 11, 743 P.2d 1084.

**5.** *Equity Mutual Ins. Co. v. Spring Valley Wholesale Nursery*, 1987 OK 121, 747 P.2d 947.

**6.** *Hartline v. Hartline*, 2001 OK 15, 39 P.3d 765.

**7.** *Tapp v. Perciful*, 2005 OK 49, 120 P.3d 480.

**8.** *Ball v. Wilshire Ins. Co.*, 2009 OK 38, 221 P.3d 717.

**9.** Title 47 O.S. Supp.2004 § 7–324, see note 3, supra.

regarding exclusion of coverage are found in title 47. Section 7–324(b)(3) [1] provided:

> "Owner's policy. Such owner's policy of liability insurance: ... 3. May by agreement in a separate written endorsement between any named insured and the insurer exclude as insured any person or persons designated by name from coverage under the policy."

Section 7–600(1)(c) [2] in pertinent part provided:

> "1. 'Owner's policy'. An owner's policy of liability insurance: ... (c) may provide for exclusions from coverage in accordance with existing laws...."

Section 7–601(B) [3] in pertinent part provided:

> "... Every person, while operating or using a motor vehicle registered in this state which is not owned by such person, shall maintain in force security for the payment of loss resulting from the liability imposed by law for bodily injury, death or property damage sustained by any person arising out of the operation or use of the vehicle, unless such security has been provided by the owner in accordance with this section *which does not exclude said person from coverage.*" [Emphasis provided.]

¶ 2 The majority opinion identifies § 7–324 as a part of the "fault-based financial responsibility law", and §§ 7–600 and 7–601 as a part of the "compulsory insurance statutes" or "compulsory omnibus coverage". However, both provide for exclusions. In *Pierce v. Oklahoma Property and Cas. Ins. Co.*, 1995 OK 78, 901 P.2d 819, Teresa Horse purchased automobile liability insurance that specifically named and excluded her husband, Gerald Horse, because the insurance company did not want to insure him since his driver's license had been revoked. There is no indication that Mrs. Horse's insurance was issued under the "fault-based financial responsibility law", in fact, just the opposite. Paragraph 1 of *Pierce* states: "We hold that such a named driver exclusion does not violate Oklahoma's public policy regarding compulsory liability insurance, and that the insurance contract, by its express language, operates to bar any liability on behalf of the insurer, including that of negligent entrustment by the insured". The policy issued under the compulsory liability insurance laws, but excluded a specifically named person from driving, and the Court upheld the exclusion.

¶ 3 *Pierce* observes that the last sentence of § 7–601 contemplates specific individuals can be excluded from coverage, and that § 7–600(1)(c) states that the liability insurance policy "may provide for exclusions from coverage in accordance with existing laws". *Pierce*, 1995 OK 78, ¶ 10, 901 P.2d 819, 822. And, as noted above, the policy was issued under the laws of compulsory liability insurance, and the Court held that such an exclusion did not violate Oklahoma's public policy. *Pierce*, 1995 OK 78, ¶ 1, 901 P.2d 819, 820. In the *Pierce* case the facts reveal that a policy issued under the laws of compulsory liability insurance does allow a specific individual to be excluded from coverage even though an innocent victim suffered injury from the negligent operation of a motor vehicle. Gerald Horse struck the motorcycle on which April Pierce was riding as a passenger, and she was severely injured; she was an innocent victim.

¶ 4 The *Pierce* case distinguished three cases: *Young v. Mid–Continent Cas. Co.*, 1987 OK 88, 743 P.2d 1084; *Equity Mutual Ins. Co. v. Spring Valley Wholesale Nursery, Inc.*, 1987 OK 121, 747 P.2d 947; and *Nation v. State Farm Ins. Co.*, 1994 OK 54, 880 P.2d 877; not because their exclusions failed to meet a "fault-based financial responsibility law" but "because of their broad and sweeping nature" [4] *Young* invalidated a clause that excluded liability coverage for any person under the age of twenty-five; *Equity Mutual* invalidated exclusion that confined liability coverage to a two-hundred mile radius; and *Nation* invalidated an exclusion that omitted

1. 2004 Okla. Sess. Laws, ch. 519, § 32.

2. 47 O.S.2001 § 7–600(1)(c). This section was amended by 2009 Okla. Sess. Laws, ch. 62, § 28, and ch. 185, § 1.

3. 47 O.S.2001 § 7–601(B). This section was amended by 2009 Okla. Sess. Laws, ch. 62, § 31.

4. *Pierce v. Oklahoma Property and Cas. Ins. Co.*, 1995 OK 78, ¶ 8, 901 P.2d 819, 821.

from coverage all resident members of the household. *Pierce*, 1995 OK 78, ¶ 8, 901 P.2d at 821.

¶ 5 *Harkrider v. Posey*, 2000 OK 94, ¶ 15, 24 P.3d 821, 829, states the principal purpose of the "compulsory automobile liability policy" is to protect the public from the financial hardship that may result from the use of automobiles by financially irresponsible persons, and concludes that this policy overrides contrary private agreements that restrict coverage. That public policy came from the statutes, the very statutes that recognize exclusions. In *Young*, the Court found that the intent of the Legislature embodied in 47 O.S.1981, § 7–601, required that any vehicle operated on the highways of Oklahoma be secured against liability to innocent victims of the negligent operation or use of the insured victim. *Young*, 1987 OK 88, ¶ 16, 743 P.2d at 1088. The very next sentence states: "We do not necessarily find that this intent is so broad as to eliminate all possible bargaining regarding liability exclusions which may be contained in the required liability insurance policies." *Young*, 1987 OK 88, ¶ 16, 743 P.2d at 1088.

¶ 6 The Legislature, from which we derive our public policy, provides for exclusion as insured of "any person or persons designated by name from coverage under the policy." That exclusion is not a broad exclusion as found in *Young, Equity Mutual,* and *Nation,* but the statute does provide for exclusions of any person or persons designated by name. The endorsement in the contracts of both of Benjamin Neal's parents excluded him by name. On its face, that exclusion appears to be valid under the statutes, enacted by the Legislature, from which comes the public policy.

¶ 7 The majority opinion characterizes the holding of *Pierce*, as requiring that a named driver exclusion be based on fault, such as a poor driving record. But the rationale for the holding was that the Legislature realized that premiums might be too costly in some circumstances, and so it chose to allow the contracting parties to exclude specifically named individuals, because in so doing, the Legislature allowed for families to obtain insurance that might not otherwise have

been affordable. *Pierce,* 1995 OK 78, ¶ 15, 901 P.2d 819, 823. The same rationale may be used to allow parties to exclude their teenage children from their automobile liability insurance policies.

¶ 8 The result of forbidding exclusion of teenaged children from automobile liability policies is that families with moderate incomes who have been able to insure their vehicles for the parents who are not high risk, may not be able to afford their policies after the premium is increased to cover teenaged children. Then the parents may be forced to risk driving without or with less insurance. Thus, fewer people have compulsory insurance.

¶ 9 This majority opinion will result in all insurance companies requiring parents to insure all teenagers in the family who are old enough to hold drivers' licenses, regardless of whether or not they have a car, do not choose to drive, or merely need a license for work or identification purposes. Forcing this additional insurance premium on parents would occur even though the Legislature has specifically allowed teenagers to be excluded from the insurance policies. Accordingly, I respectfully dissent.

